GEORGE DRAHUS, ETC., ET AL., demandantes y recurridos, *v.* NATIONWIDE MUTUAL INSURANCE CO. ET AL., demandados y recurrentes.

*Número:* R-73-284          *Resuelto:* 17 de septiembre de 1975

*José A. Rivera Mercado,* abogado de los recurrentes; *Víctor A. Coll,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La recurrente Compañía de Seguros tenía expedida póliza cubriendo a George Drahus y su esposa Odaliska contra daños resultantes de la operación de una guagua Oldsmobile perteneciente al matrimonio. El 26 de octubre de 1971, mientras la asegurada Sra. Drahus conducía, el vehículo se volcó y tanto ella como su hija de 10 años Deborah sufrieron lesiones de relativa seriedad. Para resarcirse de los daños instaron demanda contra la aseguradora recurrente los tres miembros de la familia Drahus: padre, madre e hija. La sala de instancia en extensa y bien fundada opinión desestimó la reclamación de la esposa y madre conductora y concedió daños morales por $4,000 a la menor, y $2,000 a su

padre. Por cuestionar el recurso la validez del principio de responsabilidad de los padres por actos negligentes que perjudican al hijo, visualizado en nuestro desarrollo jurisprudencial, expedimos auto de revisión.

La teoría de la inmunidad absoluta del padre o cónyuge contra litigios internos de la familia que no vulneran su estabilidad ha perdido el favor del pensamiento jurídico contemporáneo. Felix, *Interspousal Immunity in the Conflict of Laws: Automobile Accident Claims*, 53 Cornell L. Rev. 406 (1967–68), *Self* v. *Self*, 376 P.2d 65 (1962). El ulterior análisis de las razones aducidas para sostener tal evasión de las obligaciones contractuales del asegurador, susceptibles de sintetizarse en desquiciamiento de la armonía familiar y posibilidad de fraude contra la compañía, produce la insatisfacción intelectual con la norma que extendió la inmunidad indiscriminadamente. Hay que reducirla a su justo alcance.

En *Fournier* v. *Fournier*, 78 D.P.R. 430 (1955), se le dio curso a la demanda de hija contra el padre porque no había integridad familiar que proteger; los padres de la demandante vivían separados y el conflicto familiar terminó finalmente en muerte ilegal de la mujer. En el presente caso, que no tiene aquellas connotaciones trágicas, la unidad familiar tampoco está en peligro porque la demanda encauzada en la acción directa provista por el Art. 20.030 del Código de Seguros, elude la madre a cuya negligencia se atribuye el accidente y desvía todo el reproche jurídico y económico hacia la aseguradora. No hay principio de moral ni orden público mezclado en esta acción civil que se reduce a reclamar de una compañía de seguros la compensación debida por materialización del riesgo, contingencia o evento sobre el cual se obligó en la póliza.

Nuestra decisión en *Guerra* v. *Ortiz*, 71 D.P.R. 613 (1950), atemperada en su rigor excluyente por la de *Fournier*, supra, introdujo en nuestra jurisprudencia el principio de la inmunidad absoluta del padre contra la demanda del

hijo no emancipado bajo la premisa de que "reconocer la existencia de una causa de acción en estos casos sería abrir una brecha peligrosa en la unidad de la familia." *Guerra*, supra, a la pág. 619. Esta opinión se emite cuando el estado de legislación no permite al hijo o al cónyuge sacar su reclamación del ámbito familiar y dirigirla exclusivamente contra el asegurador. Dicho impedimento desapareció al adoptarse el Código de Seguros por Ley Núm. 77 de 19 de junio de 1957 que en su Art. 20.030 creó la acción directa del demandante contra el asegurador.[1] *Trigo* v. *The Travelers Ins. Co.*, 91 D.P.R. 868, 875 (1965). Eliminado el padre o el cónyuge del rol de demandado por su propio hijo o consorte desapareció, *ipso facto*, el más leve motivo de preocupación por la integridad y la paz familiar que inspiraron nuestro dictamen en *Guerra* v. *Ortiz*, ante.

■ Cuando los daños están cubiertos contractualmente por un asegurador que a todas luces no está comprendido en el ámbito afectivo de la familia, la acción no genera la animosidad ni las relaciones tirantes entre padre e hijo que caracterizan la confrontación adversativa, ni se empobrecerá el capital de la familia. De hecho se fortalecerán la unidad y el bienestar familiar porque se logra la reparación económica del infortunio que a todos aflige. El viejo fantasma del desquiciamiento de la armonía doméstica cede

---

[1] Enmendado en 1966 al solo efecto de limitar su ejercicio a Puerto Rico, el texto completo del Art. 20.030 (26 L.P.R.A. sec. 2003) es el siguiente:

"(1) La persona que sufriere los daños y perjuicios tendrá, a su opción, una acción directa contra el asegurador conforme a los términos y limitaciones de la póliza, acción que podrá ejercitar contra el asegurador solamente o contra éste y el asegurado conjuntamente. La acción directa contra el asegurador se podrá ejercer solamente en Puerto Rico. La responsabilidad del asegurador no excederá de aquella dispuesta en la póliza, y el tribunal deberá determinar no solamente la responsabilidad del asegurador, si que también la cuantía de la pérdida. Cualquier acción incoada conforme a esta sección estará sujeta a las condiciones de la póliza o contrato y a las defensas que pudieron alegarse por el asegurador en acción directa instada por el asegurado."

el sitio a la relativa satisfacción que fluye del resarcimiento pecuniario.

Prosser percibe una clara tendencia hacia la abolición de la inmunidad desde que tomó esa decisión el estado de Wisconsin([2]) en 1963 desatándose una avalancha de estados que siguieron la pauta y sintetiza así los fundamentos del nuevo criterio cuando hay cubierta de seguro de responsabilidad: "Cuando media un seguro se disuelven los argumentos usuales contra la recuperación de daños. Toda vez que el demandado no ha de pagar de su bolsillo, es obvio que el tesoro familiar no será mermado, y que la armonía del hogar no será tan lesionada por permitir la acción como lo sería por negarla; y toda vez que la parte realmente interesada en defenderse del pleito es el asegurador del riesgo, no importa cómo se conciban la unidad y la santidad de la familia, a duras penas podrá estirarse el concepto para proteger una compañía de seguros." *Law of Torts*, pág. 868, ed. 1971.

■ El argumento de que al permitir esta litigación *interfamiliar* se abren puertas al fraude y a la colusión en perjuicio de la aseguradora, carece de suficiente fuerza para prohibir este tipo de reclamación. El fraude surge también en acciones donde no existe relación familiar entre las partes adversarias, y la posibilidad de que el parentesco brinde un grado de mayor incidencia de reclamaciones falsas, no oblitera la capacidad de nuestras cortes para descubrirlo y sancionarlo. Los jueces al estimar la prueba y adjudicar credibilidad siempre han de tener presente el interés común que pueda unir al demandante y su testigo, no sólo en esta clase de litigio interfamiliar, sino en cualquier acción civil en que se produzca tal circunstancia. Arts. 400 y 383 Código de Enjuiciamiento Civil (32 L.P.R.A. secs. 1732 y 1664). Con el fraude habrá de pugnar el hombre

---

([2]) *Goller* v. *White*, 122 N.W.2d 193 (1963) seguido el *Ertl* v. *Ertl*, 141 N.W.2d 208 (1966). Notamos que West Virginia fue más temprana precursora en *Lusk* v. *Lusk*, 166 S.E. 538 (1932)—122 A.L.R. 1, 358.

mientras sufra sus imperfecciones, mas no por ello hemos de tomarlo como punto de referencia y elemento predominante en ningún orden valorativo.

■ La interpretación judicial debe propender al desarrollo empírico propiciador del remedio en todo el dilatado campo del Derecho apartando el dogma, la rigidez procesal y el razonamiento de precedentes que nacieron de premisas incorrectas. La amplitud trascendente del Art. 1802 de nuestro Código Civil en su designio reparador del daño no tolera menos.

No habiendo encontrado error en ninguno de los apuntamientos señalados por la recurrente, la sentencia del tribunal de instancia ha de ser *confirmada*.