ROSA ESTHER FERNÁNDEZ SÁNCHEZ, demandante y recurrente, *v.* FRANCISCO FERNÁNDEZ RODRÍGUEZ y OTROS, demandados y recurridos.

*Número:* RE-87-595    *Resuelto:* 11 de febrero de 1988

*Flor Casiano Báez*, abogado de la demandante recurrente; *César Hernández Colón*, abogado de los demandados recurridos.

## SENTENCIA

Revisamos, mediante el trámite de mostración de causa, una sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de Ponce, mediante la cual desestimó la demanda radicada por la demandante recurrente como "sanción" por el incumplimiento con varias órdenes emitidas por dicho foro por la representación legal de dicha demandante recurrente.

El codemandado recurrido Francisco Fernández Rodríguez ha comparecido en cumplimiento de la referida orden

de mostrar causa. Su comparecencia —aun cuando demostrativa del incumplimiento por parte del abogado de la demandante recurrente, con varias órdenes emitidas por el tribunal de instancia relativas a la notificación de peritos médicos y al examen médico del mencionado codemandado recurrido— no nos persuade de que debamos variar nuestro criterio, intimado en la orden de mostrar causa, a los efectos de que procede la expedición del auto de revisión solicitado y el que dictemos una sentencia reinstalando la causa de acción de la demandante recurrente.

I

La odisea legal de la demandante recurrente Rosa Esther Fernández Sánchez comenzó en el mes de febrero de 1982. Ante la negativa de su padre a reconocerla, se vio obligada a radicar ante el Tribunal Superior de Puerto Rico, Sala de Ponce, la correspondiente demanda de filiación. Declarada sin lugar la misma por dicho foro, mediante sentencia de fecha 28 de febrero de 1983, la señora Fernández Sánchez acudió en revisión ante este Tribunal. Actuando al amparo de la Regla 50 de nuestro Reglamento, 4 L.P.R.A. Ap. I-A, emitimos sentencia revocatoria el día 31 de mayo de 1983, devolviendo el caso al tribunal de instancia para que "a la mayor brevedad posible el tribunal sentenciador ordene y tome las medidas necesarias para que se hagan las pruebas científicas adecuadas y hoy accesibles que permitan hacer *una más juiciosa determinación* sobre si la demandante es o no hija del demandado". (Énfasis suplido.)

Pendiente de resolución final ante el tribunal de instancia el caso de filiación, la demandante recurrente Fernández Sánchez radicó ante dicho foro una moción, al amparo de la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en solicitud de una orden mediante la cual se prohibiera que el demandado y su administrador enajenaran los bienes del pri-

mero. *Se alegó en la misma que el demandado recurrido Fernández Rodríguez estaba incapacitado mentalmente* y que su administrador estaba dilapidando sus bienes. Declarada la misma sin lugar por el tribunal de instancia y habiendo acudido la demandante recurrente mediante *certiorari* ante este Tribunal, con fecha de 30 de abril de 1984 dictamos sentencia revocatoria devolviendo el caso a instancia "para que dicte el remedio solicitado sujeto a las condiciones que crea necesarias, conforme las circunstancias del caso para proteger los intereses de las partes".

Así las cosas, y aún pendiente de resolución final el caso de filiación, la demandante recurrente, dentro de dicho pleito, solicitó se le nombrara tutora de su padre. El tribunal de instancia se negó a ello, resolviendo que era materia de un pleito independiente. Nos negamos a expedir el auto de *certiorari* radicado por la demandante recurrente mediante resolución de fecha 3 de julio de 1985.

Habiendo finalmente recaído sentencia en el caso de filiación favorable a la demandante recurrente Fernández Sánchez, ésta radicó en el año de 1985 ante el Tribunal Superior de Puerto Rico, Sala de Ponce, una acción civil sobre "Administración Inapropiada, Incapacidad para Administrar Bienes y Nombramiento de Tutor" contra su padre, y otros codemandados, alegando que el primero estaba incapacitado mentalmente, que los otros codemandados le estaban dilapidando sus bienes, y solicitando que, como única hija del mismo, se le nombrara tutora de éste. Radicada moción de sentencia sumaria por el demandado recurrido —basada la misma en dos declaraciones juradas de dos peritos psiquiatras— y refutada la misma por la demandante recurrente a base de un récord médico demostrativo de que el padre de la demandante recurrente había estado hospitalizado por razón de una severa depresión mental y un intento de suicidio, el tribunal de instancia declaró la misma sin lugar por existir

controversia de hechos sobre la capacidad mental del referido codemandado recurrido.

Celebrada la conferencia con antelación al juicio y estando ya señalada la vista en su fondo del caso, la demandante recurrente radicó moción —"al amparo de lo resuelto en *Silva Oliveras v. Durán Rodríguez*, 87 J.T.S. 74"— en solicitud de nombramiento de un defensor judicial para su padre. Denegada dicha moción por el foro de instancia, acudió la demandante recurrente en revisión ante este Tribunal mediante *certiorari* a esos efectos.

Estando pendiente de resolución dicho recurso de *certiorari*, el día señalado para la vista en su fondo del caso la parte demandante recurrente solicitó la suspensión de la misma por razón de estar pendiente el mencionado recurso de *certiorari* y no estar preparada para el juicio. El demandado recurrido se opuso a dichas pretensiones. El tribunal de instancia luego de hacer un recuento de varios incumplimientos con distintas órdenes del tribunal por parte del abogado de la demandante recurrente —referentes mayormente a la notificación de testigos peritos a ser utilizados por dicha parte en la vista en su fondo del caso— procedió a desestimar la demanda radicada como sanción por razón de dichos incumplimientos.

## II

Nadie cuestiona el poder de un tribunal para desestimar, como sanción, la causa de acción de un reclamante ante el reiterado incumplimiento por parte de éste con las órdenes y directrices del tribunal. Tampoco puede cuestionarse, sin embargo, el hecho de que dicho poder debe ser ejercitado en una forma sumamente juiciosa, esto es, únicamente en casos extremos. Ello es así por cuanto la desestimación de una causa de acción priva a un ciudadano de la función judicial de adjudicación la cual forma parte de nuestra estructura cons-

titucional; al privarlo de su "día en corte", se le niega la oportunidad de *hacer valer en los méritos* la legitimidad de su derecho a reclamar justicia para él y los suyos. *Ramírez de Arellano* v. *Srio. de Hacienda,* 85 D.P.R. 823 (1962).

En armonía con lo antes expuesto, hemos expresado que la eliminación, como sanción, de las alegaciones de una parte "solamente debe hacerse en casos tan extremos que no haya duda de la irresponsabilidad o contumacia de la *parte* contra quien se toman las medidas drásticas", *Acevedo* v. *Compañía Telefónica de P.R.,* 102 D.P.R. 787, 791 (1974), y que la desestimación de un pleito "debe prevalecer únicamente en *casos extremos* al quedar expuesto *el desinterés y abandono total* de la *parte* de su caso". (Énfasis suplido.) *Arce* v. *Club Gallístico de San Juan,* 105 D.P.R. 305, 307 (1976).

Debido a ello es que en *Maldonado* v. *Srio. de Rec. Naturales,* 113 D.P.R. 494, 498 (1982) resolvimos que:

Planteada ante un tribunal una situación que, de acuerdo con la ley y la jurisprudencia aplicables, amerita la imposición de sanciones, éste debe, en primer término, imponer las mismas al abogado de la parte. Si dicha acción disciplinaria no produce frutos positivos, procederá la imposición de la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, *tan s[ó]lo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida.* La experiencia señala que en la gran mayoría de los casos que presentan esta clase de dificultades —el presente caso es un ejemplo de ello— las partes no están enteradas de la actuación negligente de sus abogados y, al advenir en conocimiento de ello, la situación es corregida de inmediato. Una parte que haya sido informada y apercibida de esta clase de situación y no tome acción correctiva, nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente

de su causa de acción y/o defensas.(1) (Énfasis suplido y escolio omitido.)

## III

Concedemos que un examen del expediente demuestra que la *representación legal* de la demandante recurrente incumplió con varias órdenes emitidas por el tribunal de instancia, referentes las mismas a notificación de testigos peritos por dicha parte y al examen médico del codemandado recurrido Fernández Rodríguez; así como también causó la suspensión, por su incomparecencia a la conferencia preliminar entre abogados, de la conferencia con antelación al juicio.

Si bien ello es cierto, no creemos que persona alguna pueda alegar que ello constituye motivo suficiente, a la luz de nuestra jurisprudencia, para desestimar la causa de acción de la demandante recurrente. En primer lugar, no surge que la *parte* demandante recurrente fuera apercibida por el tribunal de instancia respecto al incumplimiento de su abogado. *Maldonado v. Srio. de Rec. Naturales*, ante; *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807 (1986). En segundo lugar, no creemos que se pueda sostener que la demandante recurrente ha incurrido en la conducta requerida por nuestra jurisprudencia para la imposición de la extrema sanción de la desestimación, esto es, que haya sido irresponsable y haya demostrado un total desinterés y abandono de su caso. *Acevedo v. Compañía Telefónica de P.R.*, ante; *Arce v. Club Gallístico de San Juan*, ante. Si algo demuestra el récord, es lo contrario.

En resumen, la sentencia recurrida no puede prevalecer. La misma priva de su "día en corte" a una parte humilde y

(1) Norma que fue reiterada por este Tribunal en *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807 (1986).

débil que, en defensa legítima de sus derechos, lleva años litigando contra una parte poderosa e influyente. Somos del criterio, en adición, que dados los hechos particulares del presente caso —en que se alega que la demandante recurrente es indigente— se sirven mejor los intereses de la justicia si se provee para que el examen psiquiátrico del codemandado recurrido Francisco Fernández Rodríguez, el cual resulta necesario realizar en vista de las alegaciones del caso, sea realizado por un panel de psiquiatras a ser nombrado por el tribunal de instancia, los honorarios del cual serán, de momento, de cargo del referido codemandado recurrido.(2)

No podemos, por último, pasar por alto la conducta observada por la *representación legal* de la demandante recurrente en el presente caso. Esta ha sido causa de dilaciones innecesarias en el caso de epígrafe. Su conducta no sólo atenta contra la dignidad del tribunal, sino que afecta y perjudica los intereses que se supone él defienda: los de su propia representada. Entendemos procedente imponerle a éste una sanción de $150.

Por los fundamentos antes expresados, se expide el auto y se dicta sentencia revocatoria de la dictada en el presente caso por el Tribunal Superior de Puerto Rico, Sala de Ponce, reinstalándose la causa de acción radicada por la demandante recurrente. Se instruye al tribunal de instancia para que a la mayor brevedad posible proceda a designar un panel de peritos psiquiatras para que examine al codemandado Francisco Fernández Rodríguez, con cargo al caudal de dicho codemandado recurrido. Se le impone al Lcdo. Flor Casiano Báez una sanción económica de $150, la cual deberá satisfacer y consignar en el término de quince (15) días en la Secretaría del Tribunal Superior de Puerto Rico, Sala de Ponce,

---

(2) De resultar victorioso el mencionado codemandado recurrido, dichos honorarios podrían ser recobrados como parte de las "costas" del pleito.

mediante cheque certificado a nombre del Secretario de Hacienda de Puerto Rico, contado dicho término a partir de la fecha de la remisión del mandato.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió opinión concurrente y disidente. El Juez Asociado Señor Ortiz disiente sin opinión escrita.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión concurrente y disidente del Juez Asociado Señor Negrón García.

I

"Derecho es lo derecho, lo recto, lo acorde con la justicia. Por eso ha de empapar de ésta todas sus soluciones." J.B. Vallet De Goytisolo, *Estudios sobre Fuentes del Derecho y Método Jurídico*, Madrid, Ed. Montecorvo, 1982, pág. 55.

Por tal razón, hemos de temer y rechazar toda actuación o interpretación judicial, "al margen de aquella realidad viva a la que deb[e] . . . aplicarse. Las leyes no están hechas para ser confrontadas con legajos y pliegos de recursos y alegaciones, sino para plantearlas y aplicarlas a la vida real donde deben llenar un determinado fin". Vallet De Goytisolo, *op. cit.*, pág. 740.

La sentencia de este Foro que expide y deja sin efecto la desestimación decretada —a título de sanción— por el Tribunal Superior, Sala de Ponce, honra esa visión y libera a la demandante recurrente Rosa E. Fernández Sánchez de una tenaza injusta, que abruptamente puso fin a su legítimo intento de hacer valer en vida la realidad del decreto judicial filiatorio —que frente a toda clase de obstáculos forenses,

con sesenta (60) años de atrasos— obtuvo contra su progenitor Francisco Fernández Rodríguez como consecuencia de una sentencia que emitiéramos el 31 de mayo de 1983 para que mediante pruebas científicas de sangre se descorriera el misterio filial (R-83-158). Haber mantenido esa desestimación hubiese constituido un pronunciamiento negatorio de su condición de única hija.

## II

Expongamos sucintamente el trasfondo procesal de este sensible drama humano. El 14 de agosto de 1985 la Sra. Rosa Esther Fernández Sánchez, hija única de Fernández Rodríguez, presentó acción civil en su contra por alegada incapacidad para administrar bienes. En síntesis, sostuvo que su padre, que tiene 87 años de edad, ha estado recibiendo tratamiento físico y emocional, condición de la que se ha valido cierta persona para realizar unos pagos de arrendamiento y así despojarlo paulatinamente de sus bienes en detrimento del potencial de derechos hereditarios de Rosa Esther. Solicitó que se anularan varias transacciones comerciales efectuadas por él. Pidió un decreto por incapacidad y la nulidad de toda transacción indebida y, además, que se le designara su tutora. Fernández Rodríguez solicitó la desestimación de la demanda, lo que movió a Rosa Esther a enmendarla. Como reacción, Fernández Rodríguez solicitó a su favor sentencia sumaria fundado en un certificado de examen de los psiquiatras José R. Fumero-Vidal y Domingo Cordero, expositivo de que "conoce el valor de su caudal y goza de capacidad para administrarlo [y t]iene capacidad mental para asesorar a sus abogados". Apéndice VI, pág. 1. Oportunamente el tribunal dictaminó que existía controversia sobre la capacidad de Fernández Rodríguez y declaró sin lugar esa solicitud. Se fundamentó en "un expediente médico psiquiátrico del Sr. Fernández [del cual] surge que el paciente Francisco Fer-

nández trató de suicidarse produciéndose heridas en ambos brazos y el cuello, por lo cual tuvo que ser recluido de emergencia en el Hospital de Distrito de Ponce. El diagnóstico de los médicos de este Hospital y del Hospital de Damas de Ponce, al que con posterioridad fue transferido el Sr. Fernández es a los efectos de que el paciente sufría de depresión mental y 'shock' severo ya que había atentado anteriormente contra su vida". Apéndice VI, pág. 38.

Subsiguientemente acaecieron otros incidentes que culminaron en que el tribunal negara una solicitud de Rosa Esther como administradora judicial interina a tono con lo resuelto en *Silva Oliveras* v. *Durán Rodríguez*, 119 D.P.R. 254 (1987).

Durante el trámite, se suscitó una controversia en torno a quién debería pagar la evaluación siquiátrica a la que había que someter a Fernández Rodríguez. Rosa Esther, por su limitada condición económica, pidió al tribunal que ordenara a su padre cubrir esos gastos. El foro de instancia se negó y, entonces, ella acudió y tocó a las puertas de este Tribunal para solicitar ese remedio. Pendiente ese recurso ante nos, se señaló una vista plenaria en instancia. Allí ella suplicó la suspensión de los procedimientos en consideración a que tenía aquí sometido su recurso. Fernández Rodríguez se opuso. Adujo que la petición de *certiorari* no incluía una moción que solicitara la paralización de los procedimientos en instancia. El tribunal de instancia se negó a posponer el caso bajo el fundamento de que habían transcurrido dos (2) años desde el inicio del pleito sin que se hubiese evaluado al demandado recurrido Fernández Rodríguez. Como consecuencia, en vista de que Rosa Esther no estaba preparada para ventilar el caso en su fondo, desestimó.

## III

En el recurso de revisión que nos ocupa se queja de que esa desestimación constituyó, en las circunstancias particulares de su caso, una sanción muy drástica. Tiene razón. Negarnos a intervenir era apartarnos de la doctrina que perseveradamente proclama que los casos deben dilucidarse en sus méritos y, por ende, que la desestimación es una sanción muy severa que debe ser precedida de otras menos onerosas tendentes a mantener el delicado balance de justicia rápida y económica. *Srio. del Trabajo* v. *Mayagüez O.M. Club*, 105 D.P.R. 279, 283 (1976); *Arce* v. *Club Gallístico de San Juan*, 105 D.P.R. 305, 307–308 (1976); *Maldonado* v. *Srio. de Rec. Naturales*, 113 D.P.R. 494, 498 (1982).

De nada valdría el decreto filiatorio nuestro y su genuina gestión posterior de velar por los intereses de su padre y, como corolario, de los suyos. Afortunadamente, el principio constitucional que proclama la igualdad y repudia el discrimen por nacimiento, ha prevalecido. Despojada por su padre de esa condición durante toda una vida —a la ausencia del cariño y todos beneficios y dispensa que, espiritual y materialmente, de ordinario acompaña una amorosa, verdadera y normal relación paterno-filial— hemos desechado eregir unos obstáculos forenses y con ello agravado su situación de desposeída. No podemos sustituir la devaluación de una conciencia paterna y suplir ese amor, que "es por esencia libre [y n]o coacciona y no puede tampoco ser objeto de coacción; no ordena y no puede ser cumplido por medio de un mandato". L. Legaz y Lacambra, *El Derecho y El Amor*, Barcelona, Ed. Bosch, 1976, pág. 105. Pero sí podemos, por el derecho natural fundado en el vínculo de sangre —si no como remedio redentor justiciero, a título de todos los alimentos que durante seis (6) décadas le negó— obligar a su progenitor Fernández Sánchez a *sufragar todos los gastos necesarios de*

*la gestión judicial lícita de su preterida hija.* Después de todo, la "vida se da sin contar para nada con el ser que ha de vivir. El que proviene de una unión ilegítima nace tan limpio de culpa por su parte como el que procede de una unión legítima. Sin embargo, se encuentra abandonado desde su nacimiento, no tiene familia, no siente, a veces, ni el cariño de sus padres . . . . ¿Debe la ley dejar a ese hijo en el desamparo, castigando en él las faltas ajenas? La conciencia responde que no, y estima justo que esos hijos gocen, en principio, de los mismos derechos que los hijos legítimos, y ya que la ley no puede concederles cuantos lazos de afección y cuantos privilegios les arrebataron sus padres al darles la vida, debe, *al menos, reconocerles un derecho sobre los bienes de esos padres, lo mismo durante la vida de éstos* que después de su muerte". (Énfasis suplido.) J.M. Manresa, *Comentarios al Código Civil Espanol*, 8va ed. rev., Madrid, Ed. Reus, 1973, T. VI, Vol. II, págs. 6–7. Y como nos recuerda el mismo autor —citando a Laurent— el "que da la vida a un hijo, ¿no tiene hacia él deberes que cumplir? Nadie se atreverá a negarlo. Pues bien: lo que es un deber para el padre, es un derecho para el hijo. . . . A él le basta no reconocer a sus hijos, con lo cual se castiga a los inocentes, mientras que los verdaderos culpables gozan tranquilamente de su fortuna y ni siquiera sufren alteración alguna en su consideración personal. He aquí la verdadera inmoralidad que es necesario combatir". Manresa, *op. cit.*, pág. 7.

En virtud de lo expuesto, concurrimos con la sentencia que hoy deja sin efecto la desestimación decretada. Sin embargo, disentimos de la imposición de sanciones al abogado Flor Casiano Báez. Los autos reflejan que sus incumplimientos fueron precisamente en cuanto a la notificación de los testigos peritos que, según hemos señalado, a su vez se debió a las limitaciones económicas de su representada Rosa

Esther. El nexo pecuniario-forense es directo y evidente; la sanción improcedente.

Como única heredera, y con cargo al caudal de su padre Fernández Rodríguez, ordenaríamos al foro de instancia para que designara dos (2) peritos judiciales psiquiatras que —luego de los exámenes de rigor— rindieran un informe sobre la cuestión central de la capacidad de éste para administrar sus bienes y persona. Una vez satisfecho este trámite y con audiencia a las partes, el tribunal resolvería sus reclamos en los méritos. También, bajo este marco conceptual decisorio, su padre debería sufragar todos los gastos necesarios del proceso.