JUANA GARCÍA, apelada, *v.* FERNANDO ACEVEDO, ETC., apelantes.

*Número:* CE-86-543    *Resuelto:* 27 de abril de 1989

*Ángel Lacomba Morales*, abogado de los apelantes; *Sarah Torres Peralta*, abogada de la apelada.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Mediante esta decisión ponemos punto final al peregrinaje judicial iniciado en el 1948 por Juana García para que se le reconozcan en toda su plenitud sus derechos constitucionales, humanos, sociales, propietarios y estatutarios a los cuales, como hija del demandado Fernando Acevedo, es acreedora.

La controversia legal a resolverse es si es nula e ineficaz una sentencia dictada en el 1956 por el Tribunal Superior, Sala de Bayamón, que declaró sin lugar la acción de filiación instada en su representación, a pesar de que ese mismo tribunal había previamente dictaminado en una sentencia confirmada por este Tribunal, *García v. Acevedo*, 78

D.P.R. 611 (1955), que Fernando Acevedo era su padre. Para ello debemos, entre otras cosas, fijar el alcance de nuestra decisión en *Ocasio v. Díaz*, 88 D.P.R. 676, 748 (1963), al efecto de que:

> El poder judicial de todos los tribunales para dictar sentencias, o para revocarlas o modificarlas en acciones filiatorias en Puerto Rico, al único efecto de conceder el derecho al uso del apellido paterno y ningún otro derecho disfrutado por el hijo legítimo respecto a su padre y a los bienes relictos a su fallecimiento —si es que en puro derecho existió— quedó absoluta y definitivamente agotado al finalizar el día 24 de julio de 1952. Después de ese momento, o la filiación procedía a todos los efectos de ley —apellido, alimentos, herencia— o no procedía para ningún efecto.

## I

Antes de resolver, veamos el historial de la relación padre-hija y de la litigación hasta este momento.[1]

Doña Juana nació el 11 de julio de 1931 producto de las relaciones habidas entre su madre Ana García y el demandado Fernando Acevedo.[2] El 1ro de diciembre de 1948 se presentó una acción de filiación y alimentos. Una vez emplazado el demandado Acevedo y señalado el caso, éste compareció a este Tribunal cuestionando la resolución dictada por el tribunal de instancia que señalaba la acción de alimentos para una fecha anterior a la señalada para ver la acción de filiación. Mediante opinión de 21 de junio de 1949, confirmamos esa resolución. *Acevedo v. Corte*, 70 D.P.R. 94 (1949). Una vez celebrada la vista, el 21 de abril de 1950 el Tribunal de Distrito declaró sin lugar la acción de alimentos por los fundamentos siguientes:

---

[1] Según surge de la prueba documental, de los autos de los casos y de las determinaciones de hecho, en apoyo de la sentencia sumaria emitida por el tribunal de instancia.

[2] A la fecha de dictarse la sentencia en este caso, tanto el padre como la hija vivían.

Puede que esta opinión y esta sentencia en el fondo sea o implique una injusticia. Es posible que me esté equivocando. Pero en este caso hay una situación tan tremenda que milita en contra de esta niña que es muy difícil, sumamente difícil, poder resolver que ella es hija de Fernando Acevedo. La madre de esta niña, un día en el año 1939 —de ésto [sic] hace once años— fué [sic] a donde un Ministro y contrajo matrimonio y ella bajo su firma juró que había procreado con Julián Figueroa, entre otros hijos a Juana, la demandante en este caso. Durante la celebración del juicio esta misma Ana García ha declarado también bajo juramento que su hija Juana es de Fernando Acevedo. O mintió ahora ante este Juez o mintió ante el Ministro cuando contrajo matrimonio: mintió en algún sitio. Las dos declaraciones bajo juramento no pueden reconciliarse. No se le puede creer el testimonio a la madre. No se sabe cuando [sic] es que está diciendo la verdad. Es posible que cuando ella se casó con Julián Figueroa le pidiera a éste que le reconociera a los hijos que tenía. Es posible eso. La Corte con esta prueba que se ha presentado no puede dictar otra sentencia que no sea la de declarar sin lugar la demanda. La prueba aducida por la demandante es tan confusa y contradictoria que ella no puede sostener una sentencia en su favor. El testimonio de la madre no es creíble. Sólo resta el testimonio de la niña y éste es insuficiente. Hubiera querido, —bien lo sabe Dios—, dictar un fallo distinto al que estoy dictando. Pero si la Corte lo hiciera así la sentencia sería revocada por una Corte Superior.

Se declara sin lugar la demanda de alimentos radicada en este caso por Ana García en representación de su hija Juana García contra Fernando Acevedo. Añade ahora la Corte que si Acevedo es realmente el padre de Juana y sabiéndolo, lo niega, que recuerde que en esta vida todo se paga. Apéndice, págs. 252–253.

El 21 de diciembre de 1951 revocamos dicha sentencia y devolvimos el caso a instancia. Resolvimos que erró el tribunal al excluir el testimonio de Julián Figueroa, ya que el mismo era admisible a los fines de impugnar la legitimación, según lo provisto en el Art. 124 del Código Civil, 31 L.P.R.A.

sec. 486.[3] (Opinión per curiam no publicada, Caso Núm. 10, 382.) Apéndice, págs. 286–291.

El mismo juez[4] que había resuelto el caso anterior presidió el nuevo juicio. Esta vez declaró con lugar la demanda sobre alimentos al determinar que:

La prueba de la parte demandante, en síntesis, ha tendido a demostrar que Juana García es el producto de las relaciones sexuales habidas entre la madre de ésta, Ana García, y el demandado Fernando Acevedo. Contra esa prueba el demandado, con la suya, ha tratado de demostrar que la niña puede ser hija de cualquier persona debido a las relaciones que con distintos individuos sostuvo Ana García y, además, ha tendido a demostrar que la menor fué [sic] legitimada por Julián Figueroa, quien contrajo matrimonio en el año 1939 con dicha Ana García.

Al resolver el conflicto de la prueba hemos tratado de que prevalezca la justicia y, además, que ni los tecnicismos de Ley ni el poder de alguna de las partes pueda derrotar el buen sentido de humanidad que debe surgir triunfador en todo procedimiento judicial. Si dijéramos otra cosa distinta a la que pasamos a decir estaríamos consagrando la injusticia de la que queremos alejarnos como juzgador.

Convencidos estamos de que la menor Juana García fué [sic] legitimada por Julián Figueroa sin que ella fuera su hija. Al contraer matrimonio Julián Figueroa con Ana García no solamente cumplió con su deber de legitimar a sus propios hijos, sinó [sic] que no tuvo reparos de dar apellido a una criatura que él sabía que no era su hija.

Es también convencimiento íntimo que tiene el juzgador que esta menor que se llama Juana García es el producto de relaciones sexuales habidas entre el demandado Fernando Acevedo y Ana García. Por ello decimos que Fernando Acevedo siendo el padre de la menor Juana García tiene la obliga-

---

[3] "La legitimación podrá ser impugnada por los que se crean perjudicados en sus derechos, cuando se otorgue a favor de los que no tengan la condición legal de hijos naturales, o cuando no concurran los requisitos señalados en las secs. 481 a 486 de este título." 31 L.P.R.A. sec. 486.

[4] Hon. F. Gallardo Díaz.

ción moral y de Ley de darle los alimentos que le impuso como su obligación la ley natural y la ley de los hombres. Apéndice, págs. 296–297.

Además de ordenar el pago de los alimentos adeudados y futuros, ordenó que el Registro Demográfico tomara nota de que doña Juana debía ser inscrita con el nombre de Juana Acevedo, hija de Fernando Acevedo y de Ana García.

En apelación sostuvimos la determinación de paternidad por ser la prueba suficiente para probarla. Expresamos que eso era todo lo que se exigía a fin de justificar una decisión a favor de un menor demandante en un caso de alimentos. Sin embargo, modificamos la sentencia para eliminar la disposición de que se inscribiera a la menor como hija del demandado. Ello debido a que, según se interpretó el derecho vigente, *Rodríguez v. Ramos*, 73 D.P.R. 6 (1952), esa cuestión debió dilucidarse en relación con la acción de filiación, la cual no se había sometido todavía. *García v. Acevedo*, supra, pág. 617.

El 21 de diciembre de 1955 las partes en dicho caso sometieron al tribunal, y éste aprobó, la estipulación siguiente:

1. – El día 20 de abril de 1953 este Tribunal dictó una sentencia contra la parte demandada condenando al demandado a pasar a la demandante la cantidad de $20.00 semanales, en concepto de pensión alimenticia, y a pagar dicha cantidad retroactivamente desde la fecha de la demanda, o sea desde el 2 de diciembre de 1948, con costas y más $300.00 para honorarios de abogado.

2. – Que el demandado ha convenido en desistir de ulteriores procedimientos de revisión de la sentencia referida y de la dictada en el caso por el Hon. Tribunal Supremo en 16 de agosto de 1955, aceptando la parte demandante la suma de TRES MIL QUINIENTOS DOLARES ($3,500.00) como liquidación y pago total de las pensiones alimenticias, costas y honorarios de abogado devengados y que hubieran podido devengarse bajo la tal sentencia hasta esta fecha, y habiendo ya recibido la parte demandante la referida suma de $3,500.00,

otorga a la parte demandada la más formal y eficaz carta de pago.

POR TODO LO CUAL, las partes solicitan se apruebe la presente estipulación y se declare pagada y satisfecha en la forma convenida la sentencia de este Tribunal, de 20 de abril de 1953. Apéndice, pág. 333.

El 25 de septiembre de 1956 se dictó la sentencia siguiente:

Las partes en este caso han sometido una Estipulación pidiéndole al tribunal que resuelva el caso de Filiación por la Transcripción de Evidencia practicada durante el juicio celebrado para la reclamación de alimentos.

Estudiada la Transcripción de Evidencia, la prueba en conjunto lleva al tribunal a la conclusión de que debe declarar, como al efecto declara, sin lugar la acción de Filiación en este caso, sin costas y sin honorarios de abogado. Apéndice, pág. 16.

Así se mantuvo la relación entre padre e hija, hasta que el 24 de abril de 1984 Juana García instó la presente acción sobre nulidad de sentencia y daños y perjuicios. En lo pertinente al derecho aplicable, se alegó que:

(5) La situación injusta en términos humanos e inequitativa, ilegal e inconstitucional en términos jurídicos, quedó corregida con efectos retroactivos en el caso de *Ocasio vs. Díaz,* 88 D.P.R. 676 (1963).

(6) Decretada la ley vigente en *Ocasio vs. Díaz* con efecto retroactivo conteniendo como único requisito que el padre estuviere vivo a 25 de julio de 1952— el demandado Fernando Acevedo vive hoy día—la Ley del Caso en el caso de instancia lo es la Sentencia emitida por el Honorable Tribunal Supremo de Puerto Rico en el caso publicado en 78 D.P.R. 611, confirmando en ese aspecto el decreto judicial del Tribunal Superior de Puerto Rico, de 20 de abril de 1953.

3. Siendo nula, inexistente y no [sic] a esta fecha la Sentencia de 25 de septiembre de 1956, procede en derecho que se decrete la nulidad *ab initio* de la misma. Se solicita que su nulidad, inexistencia e inconstitucionalidad se decrete judicialmente y en forma *nunc pro tunc.*

IV. *La inconstitucionalidad de la Sentencia de 25 de septiembre de 1956*

4. En las circunstancias que surgen de autos, la Sentencia de 25 de septiembre de 1956, es nula *ab initio*, inexistente y contraria a las disposiciones constitucionales de la Constitución del Estado Libre Asociado de Puerto Rico:

(a) Constituye actuación judicial inconstitucional denegar la filiación, luego de mediar una sentencia firme decretando paternidad, confirmada por [sic] Tribunal Supremo de Puerto Rico.

La actuación judicial reflejada en la Sentencia de 25 de septiembre de 1956 es inconstitucional, y su nulidad *ab initio* e inexistencia debe ser decretada judicialmente en el caso de instancia[.]

(b) La decisión de *Ocasio vs. Díaz*, 88 D.P.R. 676 (1963) constituye la Ley del Caso para todos los hijos sin importar fecha o circunstancias de nacimiento, cumplimentado el requisito de que el padre estuviera vivo el 25 de julio de 1952. Fernando Acevedo está vivo al presente.

(c) Un Tribunal de Puerto Rico carece de facultad constitucional para denegar paternidad en filiación, una vez decretada por sentencia firme la misma paternidad en incidente previo de alimentos.

El principio de una sola paternidad está entronizado en las premisas constitucionales inalienables de la inviolabilidad de la dignidad del ser humano, y en el derecho a una igual protección de las leyes y a un debido procedimiento de ley.

Cualquier actuación judicial en contravención con los postulados constitucionales antes indicados contenidos en *Ocasio vs. Díaz*, 88 D.P.R. 676, (1963) y en el Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, es inconstitucional, y su inconstitucionalidad deberá ser decretada judicialmente. Apéndice, págs. 5–6.

Trabada la controversia, ambas partes se acogieron al procedimiento de sentencia sumaria por no existir en el caso controversia sobre los hechos esenciales. La contienda se centralizó en la validez, o falta de validez, de la sentencia que declaró sin lugar la acción de filiación y la facultad del tribu-

nal para hacer esa determinación en esta etapa del procedimiento.(5)

En una extensa y fundamentada opinión, el juez de instancia, Hon. Rafael A. Contreras Estelritz, dictó sentencia sumaria parcial(6) a favor de la demandante por razón de que, y citamos:

> Siendo la demandante hija del demandado, a los fines de alimentos, conforme a sentencia final y firme emitida por esta Sala, de fecha de 20 de abril de 1953, confirmada por el Honorable Tribunal Supremo de Puerto Rico, mediante sentencia de 16 de agosto de 1955, 78 D.P.R. 611, y existiendo una sola paternidad, el demandado Fernando Acevedo es el padre de la demandante Juana García a todos los efectos de ley.
>
> La sentencia emitida por el Honorable Tribunal Superior de Puerto Rico, Sala de Bayamón, el 25 de septiembre de 1956 denegando la paternidad a los fines de filiación en el caso R-4552, es nula e inexistente, sin valor o efecto jurídico alguno por haber sido emitida sin jurisdicción, y en contravención al principio unitario de la paternidad encarado en la Constitución del Estado Libre Asociado de Puerto Rico, y adoptado estatutariamente en la ley número 17 de 20 de agosto de 1952. Apéndice, págs. 372–373.

El demandado presentó recursos oportunos separados de apelación y de revisión. Denegamos expedir el auto de revi-

---

(5) Hubo un planteamiento de la demandante sobre la nulidad de la notificación de la sentencia que fue correctamente rechazado por el tribunal y no es objeto de señalamiento en este recurso.

(6) Quedó pendiente de adjudicación la reclamación de daños y perjuicios. A esos efectos, el magistrado señaló que:

"Por efecto de la sentencia sumaria dictada, queda para resolución independiente la reclamación de daños y perjuicios formulada por la demandante en su demanda de 23 de abril de 1984, basada en la alegación central, de que:

"'A través de toda la vida de la demandante, esta ha sido, sometida a humillaciones y dolores y angustias provenientes de haber sido negada como hija de su padre demandado, quien por su conducta provocó que ante todos, la compareciente fuera tratada como hija bastarda, sin padre, además del dolor interno de sentirse abandonada, rechazada, y herida en lo más profundo de su esp[í]rit[u] por la pretensión del demandado de que no era su padre, a sabiendas de que lo era, que la paternidad fue decretada judicialmente y no obstante conocer la decisión de *Ocasio v. Díaz* . . .'." Apéndice, págs. 378–379.

sión (Caso Núm. RE-86-401, *García v. Acevedo*, supra) y admitimos la apelación por plantear una cuestión constitucional sustancial. Las partes han sometido sus respectivos alegatos, por lo que estamos en posición de resolver. Por ser correcta en derecho, confirmamos la sentencia apelada.

## II

En apoyo de su recurso, el apelante hace dos (2) planteamientos. El primero es de índole constitucional en el sentido de que su solución depende, en gran medida, de la interpretación que le demos a los derechos constitucionales involucrados en este caso. El segundo, sobre si la sentencia original es nula o no y, si procede una compensación en daños, si es de índole estatutaria.

## III

A los fines de cuestionar la conclusión del tribunal de que la sentencia de 1956 que rechazó la acción filiatoria es nula, el apelante sostiene que al momento de emitirse dicho fallo la norma jurisprudencial de este tribunal era que la paternidad no era equivalente a la filiación, y que el grado de prueba para establecer cada una de ellas era distinto. Es correcto que casos tales como *Álvarez v. Álvarez*, 77 D.P.R. 909 (1955), y *Sánchez v. Díaz*, 78 D.P.R. 811 (1955), favorecían dicha posición, pero precisamente en *Ocasio v. Díaz*, supra, se revocó dicha norma y se aclaró que, a partir de 25 de julio de 1952, no habría diferencia entre la paternidad y la filiación. Son términos idénticos sin que haya variación entre los grados de prueba para establecer dichos estados biológicos y civiles.

El apelante le da suma importancia al siguiente *dictum* de nuestra opinión en *Garzot v. Tribunal Superior*, 90 D.P.R. 359, 365 (1964):

> No podemos convenir con la parte recurrida en que nuestra actuación tenga el efecto de revivir las acciones de filiación ya

terminadas y resueltas al amparo de la interpretación de la ley que abandonamos en *Ocasio*. Salvo la concurrencia de circunstancias extraordinarias cuya identidad específica no podemos ahora anticipar, con toda probabilidad, por tratarse de sentencias firmes y *finales*, la excepción de cosa juzgada impediría su relitigación. Este espectro de Banquo no debe turbar nuestra tranquilidad. Tampoco deben preocuparnos las transacciones que respecto al caudal puedan haberse realizado con posterioridad a nuestra resolución original. Cualquier disposición de bienes hecha de buena fe estará protegida por conocidos principos [sic] de derecho que no es necesario mencionar.

Pero dicho punto fue aclarado en la atinada exposición que en su voto concurrente hizo el finado Juez Asociado Señor Santana Becerra, al efecto de que:

Suscribo sin reserva alguna la opinión del Tribunal. La opinión cree preciso destacar con énfasis el hecho de que el pleito que da lugar a los pronunciamientos de ahora "se encuentra aún pendiente". Ante los planteamientos de la parte demandada, deseo exponer lo siguiente en lo que a mi criterio respecta:

Pronunciamientos filiales a tenor de la legislación anterior *hechos en vida del padre*, y limitativos del derecho a la herencia aun cuando fueren firmes, carecen de virtud y a mi juico [sic] no pueden invocarse por razón de la cosa juzgada o de la ley del caso en contra de un hijo que reclama su herencia en aquellas situaciones en que, hecho el pronunciamiento *en vida del padre*, repito, éste hubiere fallecido o falleciere en o a partir del 25 de julio de 1952.

Este criterio responde al hecho básico en el fondo de toda esta cuestión filial, de que el derecho hereditario debe determinarse por la ley vigente al abrirse la herencia, y todo pronunciamiento así hecho con consecuencias jurídicas *in futuro*, carecería *ipso jure* de efectividad ante la actual legislación en contrario a partir de 1952, sin que dicho pronunciamiento judicial pueda prevalecer contra el superior mandato de la Constitución y de la ley, por doctrina alguna de cosa juzgada o de ley del caso. (Énfasis en el original.) *Garzot v. Tribunal Superior*, supra, pág. 367.

Aún más, la cuestión quedó definitivamente aclarada en la opinión unánime que emitimos en el caso de *Pol Sella v. Lugo Christian*, 107 D.P.R. 540 (1978).[7] Allí resolvimos que:

En *Ocasio* declaramos derogados los requisitos de prueba del Art. 125 del Código Civil e inoperante toda ley o sentencia que restrinja o reduzca el derecho dimanante de la condición de hijo. Desapareció el absurdo de una declaración de paternidad sin más consecuencia jurídica que el pago de una pensión alimenticia. Sostuvo este Tribunal en *Ocasio* que "carece de validez toda disposición estatutaria y toda sentencia, decreto o fallo judicial que . . . únicamente le conceda, reconozca o atribuya al estado de hijo de un ser humano, nada más que parte de los derechos unitarios de que disfruta el hijo llamado legítimo" y que "si procede declararse comprobado satisfactoriamente el hecho de la paternidad, el estado de hijo debe reconocerse a todos los efectos legales, es decir, con los mismos derechos que tiene un hijo legítimo, sin excepción o limitación alguna." *Pol Sella v. Lugo Christian*, supra, págs. 547–548.

De manera que no cabe duda al respecto. A partir de 25 de julio de 1952 toda sentencia, decreto o fallo judicial que rehúse o se niegue a reconocer todos los derechos del hijo, a pesar de haberse comprobado el hecho de la paternidad, carece de validez y es nulo. Si había alguna duda, la misma es aclarada y disipada en este momento. Sería prolijo en este momento reiterar las justificaciones para ello. Basta una lectura serena y juiciosa de *Ocasio v. Díaz*, supra, para darnos cuenta de su razón de ser. Lo único que estamos haciendo es darle plena virtualidad al axioma constitucional que prohíbe el discrimen por razón de nacimiento y proclama la igualdad del ser humano.[8] Ante ello no caben murallas

---

[7] Donde el *issue* fundamental era la interrelación entre el efecto de las sentencias en las acciones penales y civiles sobre alimentos y filiación. Se reiteró que lo determinante es la paternidad.

[8] Véase como ejemplo del enfoque liberador que ha traído *Ocasio v. Díaz*, 88 D.P.R. 676 (1963), la decisión en *Moreno Álamo v. Moreno Jiménez*, 112 D.P.R. 376, 385–386 (1982), donde resolvimos que:

procesales fundamentadas en doctrinas de inferior génesis, tales como cosa juzgada —*Pérez v. Bauzá*, 83 D.P.R. 220 (1961)— incuria o prescripción, *Figueroa v. Banco de San Juan*, 108 D.P.R. 680 (1979). Véase *García López v. Méndez García*, 88 D.P.R. 363 (1963).

Por las razones constitucionales y de orden público expuestas anteriormente, confirmamos la sentencia de avanzada emitida por el tribunal de instancia y le reconocemos todos los derechos constitucionales y legales que como hija tiene la demandante y apelada Juana García.[9]

## IV

Por no estar adecuadamente planteado ni discutido por el apelante, no estamos en condiciones de resolver si procede la acción de daños y perjuicios instada por la hija contra su padre. Ambas partes analizan la procedencia de la acción a base de los hechos presentes. Ello a pesar de que en el tribunal de instancia no se hizo un planteamiento concreto al respecto, ya que las mociones de sentencia sumaria estaban únicamente dirigidas a resolver la acción filiatoria.

---

"Si en virtud de *Ocasio v. Díaz*, la declaración *judicial* del *status* de todo hijo 'se fundará en la comprobación del hecho de la paternidad natural o biológica, *sin importar la fecha ni demás circunstancias . . . bajo las normas usuales de evidencia . . .*', difícilmente podemos sostener la razonabilidad, virtud y lógica de una interpretación literal con respecto a la presunción contenida en el Art. 113, segundo párrafo. Después de esa decisión, la declaración *legislativa* del *status* de un hijo no puede ampararse en una presunción categórica y restrictiva, casi absoluta, excluyente de 'las normas usuales de evidencia, determinada prueba y demás circunstancias del nacimiento'. Véase, E. Chiesa, *Sobre la Validez Constitucional de las Presunciones*, XIV Rev. Jur. U.I.A. 727–753 (1980). Ello con mayor razón si tomamos en cuenta que recientemente, en *Ortiz v. Peña*, 108 D.P.R. 458 (1979), refrendamos la confiabilidad de las pruebas serológicas para establecer la no paternidad y autorizamos expresaménte a los tribunales del país para que discrecionalmente ordenaran exámenes de sangre en acciones 'en la que la paternidad sea un hecho pertinente'." (Énfasis en el original.)

[9] Como dijéramos en *Ramos v. Marrero*, 116 D.P.R. 357, 371 (1985), aseguramos una vez más "'el triunfo del sentido humano de la ley'" a que aludieron los Jueces Texidor Alcalá del Olmo y Negrón Fernández en *Stella Vda. de Ortiz v. Corte*, 41 D.P.R. 635 (1930), y *Agosto v. Javierre*, 77 D.P.R. 471 (1954).

De manera que se confirmará la actuación del tribunal de posponer el trámite sobre la acción de daños y perjuicios. En su momento en instancia se resolverá, a base de los hechos ante sí, si el demandado es responsable en daños y si la preservación de la unidad familiar y la posible confusión entre los bienes de la hija y de su padre impiden la indemnización solicitada. Véanse, sobre problemas relacionados: *Drahus v. Nationwide Mutual Ins. Co.*, 104 D.P.R. 60 (1975); *Fournier v. Fournier*, 78 D.P.R. 430 (1955); *Guerra v. Ortiz*, 71 D.P.R. 613 (1950), y las expresiones vertidas por el Juez Asociado Señor Negrón García en su opinión concurrente y disidente en *Fernández Sánchez v. Fernández Rodríguez*, 120 D.P.R. 422, 429 (1988).

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Pons Núñez no intervino.