José Agustín Guerra, en representación del menor Cruz Ortiz, demandante y apelado, *v.* Eulogio Ortiz y Royal Indemnity Company, demandados y apelantes.

Núm. 10067.—*Sometido:* Febrero 7, 1950. *Resuelto:* Junio 23, 1950

614

*Wilson P. Colberg,* abogado de los apelantes; *Bolívar Pagán,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

¿Tiene un hijo menor de edad no emancipado una causa de acción bajo el artículo 1802 del Código Civil, ed. de 1930, en contra de su padre, por los daños y perjuicios sufridos como consecuencia de la negligencia de este último? Esta es la cuestión primordial a resolver en el presente recurso. Los hechos son los siguientes:

La demanda en este caso se radicó por José Agustín Guerra como defensor judicial[1] y en representación del menor Cruz Ortiz y en ella se alega que el 27 de junio de 1948 y mientras el menor viajaba como huésped (*guest*) del codemandado Eulogio Ortiz en un automóvil propiedad de y conducido por éste, sufrió la fractura de su brazo izquierdo, del cual ha quedado completamente incapacitado; que el accidente causante del daño se debió a la negligencia del demandado por haber conducido el vehículo a una velocidad exage-

---

[1] La corte inferior lo había nombrado previamente, autorizándolo expresamente para entablar esta acción.

rada y sin tomar las debidas precauciones, lo que ocasionó que el vehículo chocara con un árbol; que el menor ha sufrido grandes angustias físicas que estima en $3,000 y por haber quedado incapacitado de su brazo izquierdo, reclama $10,000. Se alega, además, que el automóvil del demandado estaba asegurado con la codemandada Royal Indemnity Company, corporación autorizada para hacer negocios en Puerto Rico.

Los demandados radicaron una moción sobre sentencia sumaria en la cual hicieron constar que el menor Cruz Ortiz es hijo legítimo de Eulogio Ortiz, tenía catorce años y que el día del accidente viajaban en el automóvil otros dos hijos menores de edad y su esposa; que se hacen formar parte y se adoptan por referencias a la moción, las alegaciones y evidencia sometidas en el expediente sobre nombramiento de defensor judicial; que según se desprende de la demanda y demás alegaciones de dicho expediente, se trata de una acción de un hijo legítimo contra su padre por un "tort" en la cual se alega haber sido la causa próxima del mismo la negligencia de dicho padre y que de acuerdo con dichos hechos, el menor demandante no tiene causa de acción contra su padre el codemandado Eulogio Ortiz.

A los fines de la moción sobre sentencia sumaria, las partes suscribieron la siguiente estipulación de hechos:

"1. Que el demandante nació el día 3 de mayo de 1935, y es hijo legítimo del codemandado Eulogio Ortiz y doña Teodora Félix, habiendo dichos esposos contraído matrimonio legítimo el día 5 de mayo de 1931.

"2. Que el demandante ha residido y vivido siempre con sus padres legítimos, estando bajo su patria potestad y custodia.

"3. Que el demandante no tiene medio de fortuna alguno, dependiendo única y exclusivamente para su manutención y sustento de su legítimo padre, el codemandado Ortiz.

"4. Que el accidente a que se contrae esta demanda ocurrió mientras el codemandado Eulogio Ortiz manejaba su vehículo, yendo en el mismo su madre legítima y sus otros dos hermanos, todos menores de edad y bajo la patria potestad del codemandado Ortiz, siendo el demandante uno de los ocupantes del vehículo, en compañía de las personas mencionadas."

Estipularon además lo siguiente:

"Ambas partes en este caso, representadas por sus respectivos abogados que suscriben, estipulan, además, solicitar al Tribunal que se dicte la sentencia sumaria, alegando, como alegan por la presente, respectivamente, que la sentencia debe ser dictada a favor del demandante o a favor de los demandados, según la opinión que tuviera el Tribunal en cuanto a las cuestiones de derecho envueltas, en los méritos del caso."

De acuerdo con estas estipulaciones la corte inferior dictó sentencia declarando con lugar la demanda y condenando a los demandados a pagar al demandante la suma de $8,000, las costas y $400 para honorarios de abogado. No conformes los demandados apelaron y en este recurso alegan que la corte inferior erró al sostener que un hijo menor, que vive bajo la patria potestad, guarda y custodia de su legítimo padre, puede demandar por daños recibidos y causados por la negligencia de su padre y al condenar a los demandados a pagar $8,000 como compensación por los daños sufridos por el demandante, sin evidencia alguna al efecto y sin que se le hubiese sometido el caso por las alegaciones.

 Bajo el artículo 1802 del Código Civil, ed. de 1930, "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". ¿Fué la intención del legislador al redactar esta disposición tan general en sus términos, incluir la responsabilidad de un padre negligente para con su hijo menor de edad que ha sufrido daños como consecuencia de dicha actuación negligente? Ninguna sentencia del Tribunal Supremo de España y ningún comentarista del Código Civil Español, interpretando el artículo 1902 del referido cuerpo legal equivalente al 1802 del nuestro, han citado la corte inferior ni el apelado, y ninguno hemos podido encontrar que conteste esta pregunta en la afirmativa. Tampoco ha sido contestada en forma alguna en esta jurisdicción. Esa ausencia absoluta de precedentes nos parece significativa debido a la naturaleza y alcance de la acción y la forma directa en que puede afectar las rela-

ciones paterno–filiales determinadas en el Título VIII del Libro Primero del Código Civil, (²) las cuales están investidas del más alto interés público y social.

Es cierto que hemos resuelto que bajo nuestro Código Civil la patria potestad no se establece para provecho del padre sino para beneficio del hijo. *Llopart* v. *Mesorana*, 49

(²) Algunos de los artículos pertinentes disponen:

"Artículo 152.—La patria potestad sobre los hijos legítimos no eman-cipados corresponde, en primer término, al padre, y en ausencia, impedimento legal o muerte de éste, a la madre.

"Los hijos ilegítimos,· y los adoptivos menores de edad, estarán bajo la potestad del padre o de la madre que los haya reconocido o adoptado. Si ambos los hubieran reconocido o adoptado, será en ese caso aplicable lo dispuesto en el párrafo primero de este artículo.

"Artículo 153.—El padre y la madre tienen, respecto de sus hijos no emancipados:

"1. El deber de alimentarlos, tenerlos en su compañía, educarlos e instruirlos con arreglo a su fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho.

"2. La facultad de corregirlos y castigarlos moderadamente o de una manera razonable.

"Artículo 154.—La administración de los bienes de los hijos que estén bajo la patria potestad pertenece, en primer término, al padre, y en ausen-·cia, impedimento legal o muerte de éste, a la madre.

"Artículo 155.—Los bienes que el.hijo no emancipado haya adquirido o adquiera con su trabajo o industria, o por cualquier título lucrativo, ·pertenecen al hijo en propiedad, y en usufructo a los padres que le tengan en su potestad y compañía; pero si el hijo, con consentimiento de sus pa-·dres, viviere independientemente de éstos, se le reputará para todos los ·efectos relativos a dichos bienes, como emancipado, y tendrá en ellos el ·dominio, el usufructo y la administración.

"Artículo 158.—Los padres tienen, relativamente a los bienes del hijo ·en que les corresponda el usufructo o administración, las obligaciones de todo usufructuario o administrador, y las especiales sobre hipoteca legal ·establecidas en la ley hipotecaria.

"Se formará inventario, con intervención del fiscal, de los bienes de los hijos en que los padres tengan sólo la administración; y, a propuesta del mismo podrá decretarse por la corte de distrito el depósito de los valores mobiliarios propios del hijo.

"Artículo 160.—Siempre que en algún asunto el padre o la madre ten-gan un interés opuesto al de sus hijos no emancipados, la corte de distrito nombrará a éstos un defensor que los represente en juicio y fuera de él.

"La corte de distrito. a petición del padre o de la madre, del mismo menor, del fiscal o de cualquiera persona capaz para comparecer en'juicio, conferirá el nombramiento de defensor al pariente del menor a quien en su caso correspondería la tutela legítima, y a falta de éste, a otro pa-riente o a un' extraño."

D.P.R. 250 y casos en él citados. (³) ¿Significa esto que si en el ejercicio de dicha .potestad el padre incurre en algún acto de negligencia que cause daño a su hijo, ese hecho es suficiente para crear una causa de acción a favor del hijo? Creemos que no. La negligencia de un padre en un caso de esta naturaleza no presume ni conlleva ninguna actuación voluntaria o perversa en contra de su hijo. De haber existido tal voluntariedad o preversidad el caso caería bajo otras disposiciones, tanto del Código Civil como del Código Penal, las primeras, aquéllas que puedan dar lugar a la privación de la patria potestad bajo el artículo 166 del Código Civil (⁴) y las segundas, aquéllas que imponen la sanción penal correspondiente a la actuación ilícita.

Como dice Manresa, comentando el artículo 1902 del Código Civil de España equivalente al 1802 del nuestro, y haciendo a su vez referencia a Sánchez Román:

"Es decir, que la idea de la culpa, según dice el Sr. Sánchez Román, lleva consigo la de la contradicción voluntaria de un derecho ajeno con la cual se causa perjuicio, daño u ofensa a aquél cuyo patrimonio jurídico pertenece el derecho indicado: pero esa violación del mismo, causante del daño o perjuicio, ha de ser independiente de toda convención anterior, y por eso ha sido conocida esta culpa con el nombre de *extracontractual*. En cambio, *en la negligencia no hay acto positivo alguno del responsable de la misma, ni hay voluntad activa ni intención*, sino meramente una omisión de los deberes de prudencia, de previsión, de vigilancia, que la ley impone." (Bastardillas nuestras.) XII Manresa, Comentarios al Código Civil Español, 4ta. ed., pág. 541.

(³) En igual sentido se ha orientado la jurisprudencia del Tribunal Supremo de España. Véanse Castán, Derecho Civil Español, Común y Foral, t. 4, 6ta. ed. (1944), pág. 37 y las Sentencias de 24 de mayo de 1909 y 24 de junio de 1929.

(⁴) El artículo 166 dispone lo siguiente:

"Los tribunales podrán privar a los padres de la patria potestad, o suspender el ejercicio de ésta, si trataren a sus hijos con dureza excesiva, o si les dieren órdenes, consejos o ejemplos corruptores, nombrando en su lugar un tutor, con arreglo a la ley, para las personas de los hijos. En estos casos, deberán también privar a los padres de la administración y usufructo de los bienes del hijo, y adoptar las providencias que estimen convenientes a los intereses de éste."

Reconocer la existencia de una causa de acción en estos casos sería abrir una brecha peligrosa en la unidad de la familia, constituída bajo el régimen de la patria potestad ejercida por el padre, o por la madre en los casos señalados por el artículo 152, supra, no sólo para beneficio de los hijos sino también, como comenta Manresa, para beneficio del estado, ya que interesa ". . .sumamente al buen orden y a la prosperidad social, que esté fuertemente constituída la autoridad paterna para que reine en la familia una firme y constante disciplina, de la que salgan después ciudadanos educados en el respeto a las leyes y a los magistrados de su país." II Manresa, ob. cit., 6ta. ed., revisada por Francisco Bonet Ramón (1944), pág. 10.

▉ Existe otro factor de gran importancia que debemos considerar al resolver la cuestión planteada y es que, bajo el artículo 155 del Código Civil, supra, los bienes que el hijo no emancipado adquiera, si bien le pertenecen en propiedad, "pertenecen . . . en usufructo a los padres que le tengan en su potestad y compañía . . .", teniendo ellos, además, de acuerdo con el artículo 154, supra, la administración de dichos bienes. Surgiría aquí, por tanto, la situación anormal—por no conceptuarla de inmoral—de que el padre vendría a ser el administrador y usufructuario de lo que, por su actuación puramente negligente, obtuviera el hijo. Podría argüirse que esos derechos de administración y usufructo legal concedidos a los padres podrían ser renunciados por éstos. Los comentaristas del Código Civil Español sostienen lo contrario. Dice Castán, ob. cit., a la pág. 52:

"Se ha discutido si son renunciables los derechos de administración y usufructo legal concedidos a los padres, y la solución del problema depende de que se estimen tales derechos como de orden público o de simple interés privado. En nuestra opinión (que es la general entre los autores que, como Mucius Scaevola y Valverde, se ocupan del problema) no caben renuncias en esta materia, porque los derechos de que se trata van inherentes a la patria potestad, y *esta institución es, más que un derecho, una función de notorio interés público y carácter social.* Especial-

mente con relación a la administración, la tesis de la irrenuncia-bilidad es de la mayor evidencia, pues la administración del patri-monio del hijo no es más que una consecuencia directa del deber de asistencia y protección, que es carne y sangre de la patria potestad."

Llama la atención dicho autor, además, al artículo 108, inciso 7 de la Ley Hipotecaria preceptivo de que no se podrá hipotecar el derecho de usufructo concedido por las leyes a los padres sobre los bienes de sus hijos, lo que ". . . presta apoyo a la doctrina de la inalienabilidad, y, por consiguiente, la de irrenunciabilidad, ya que la renuncia es una forma de enajenación". En cuanto a este aspecto de la cuestión, dice don Luis Muñoz Morales en sus Lecciones de Derecho Hipote-cario, t. II, pág. 52:

"El usufructo que a los padres corresponde respecto a los bienes de sus hijos menores, y regulado por los artículos 155 y 156 del Código Civil, no es hipotecable porque este factor fun-damental en la institución de la patria potestad y su aspecto económico, se considera con vista al patrimonio de los hijos y cumplimiento de sus deberes paternos. . . ."

Surge siempre, como un impedimento, el factor fundamen-tal de la institución de la patria potestad, de la unidad de la familia, al tratar de cohonestar esta clase de acciones. No importa que en el Dominio del Canadá, bajo una disposición del Código Civil de Quebec similar a la del artículo 1802 del nuestro, se haya dicho en el caso de *Fidelity & Casualty Co.* v. *Marchand*, 4 D.L.R. 157 (1924), que la causa de acción del hijo menor contra el padre existe, aplicándose por uno de los jueces (5) la máxima de *lex non distinguit*, mientras que otro juez dice que el caso aparentemente cae bajo el artículo 1053 del Código Civil pero que "no es necesario determinar esa importante cuestión en esta apelación". De hecho, lo dicho por los demás jueces en un *obiter*, ya que la apelación en dicho caso era contra una sentencia obtenida por el padre en contra

---

(5) Aparentemente cada uno de los jueces emite opinión separada pues hay cinco en dicho caso.

de la compañía aseguradora en cobro de los $5,000 a que había sido condenado a pagar en la acción de daños entablada por su hijo, representado por su tutor, y habiendo el padre satisfecho la sentencia al hijo antes de vencer el término que tenía la compañía aseguradora para apelar de la misma, se resolvió que el padre había violado varias cláusulas del contrato de seguro que le obligaba a prestar toda su cooperación a la compañía y por tanto se desestimó la acción. Aun cuando lo dicho por varios de dichos jueces no fuera un *obiter*, tampoco estamos obligados a aceptar su interpretación del artículo 1053 del Código Civil de Quebec como norma para aplicarla a la del artículo 1802 del nuestro.

Tampoco lo resuelto en el caso de *García* v. *Fantauzzi*, 20 F.2d 524 (C.C.A. 1, 1927) constituye obstáculo o es contrario a la conclusión a que en el presente llegamos. En dicho caso se resolvió que un hijo natural tenía una causa de acción, bajo el artículo 1802, supra, en contra de su supuesto padre en reclamación de daños y perjuicios, cuando se alegaba en la demanda que no sólo el padre se había negado a reconocerlo como hijo sino que voluntaria y criminalmente y conspirando con otras personas mediante el pago de dinero, indujo por medio de fraude a la madre del demandante y a un barbero de la raza de color a comparecer ante un notario y otorgar un documento público en el cual dicho barbero reconocía al demandante como hijo suyo, haciéndoles creer que sólo estaban adoptándolo. En la corte inferior([6]) se desestimó la demanda, a base de una excepción previa, por no aducir hechos constitutivos de causa de acción. Al revocar, la Corte de Circuito dijo, a las págs. 527 y 528:

"Correctamente analizado, el caso expuesto no es uno de filiación o para obtener alimentos presentes o futuros o para ser declarado heredero. *Tampoco es un pleito de un hijo que vive con la familia, en contra de su padre.* Es un pleito para recobrar daños basados en *el fraudulento incumplimiento por el*

---

([6]) La Corte de Distrito de los Estados Unidos para Puerto Rico.

*demandado de su deber de alimentar y educar, conspirando con otros para que la paternidad del demandante se le atribuyera al barbero negro.*

"..........

"No pasemos por alto la doctrina establecida en los casos de (se citan). Estos casos sostienen que es contrario a la política pública el permitir a un hijo menor de edad, *que vive en la familia,* demandar a un padre en *tort* por los daños causados. El ilustrado abogado del demandado no cita estos casos ni arguye que tal doctrina sea aplicable al presente caso, en el cual el demandante *nunca ha formado parte de la familia del demandado.* Concurrimos en el punto de vista, implícito, de que la política pública que favorece la unidad familiar no puede invocarse para derrotar una reclamación de daños que surge de la violación por el demandado de todas las obligaciones que surgen de la limitada relación familiar impuesta por las leyes de Puerto Rico al padre de un hijo natural. . . ." (Bastardillas nuestras.)

Como puede verse, el caso de *García* v. *Fantauzzi,* más bien está de acuerdo con la doctrina que establecemos en el presente al interpretar el artículo 1802 del Código Civil. No se trataba allí de una acción basada en la negligencia del padre sino más bien de actuaciones fraudulentas realizadas voluntariamente por el padre con el fin de perjudicar los derechos de un hijo natural que nunca formó parte de la familia de su padre y la Corte de Circuito reconoció que no podía invocarse la política pública que favorece la unidad familiar. Sea ello como fuere, tratándose de una cuestión local, corresponde a esta Corte interpretar, por primera vez, el alcance del artículo 1802 en relación con la causa de acción aquí ejercitada.

■■ Se arguye que si el artículo 160 del Código Civil autoriza el nombramiento de un defensor judicial a los hijos no emancipados para que los represente en juicio y fuera de él, siempre que en algún asunto el padre o la madre tengan un interés opuesto al de ellos, eso indica que el hijo puede demandar a su padre en reclamación de daños y perjuicios, ya que éste es un asunto en que ellos tienen un interés

opuesto. No estamos conformes. El artículo 160 está comprendido en el Capítulo III del Título VIII que trata "De los efectos de la patria potestad respecto a los bienes de los hijos". El "interés opuesto" a que se refiere dicho artículo ha sido interpretado en el sentido de que exista una incompatibilidad de intereses sobre determinados bienes, por ser los padres y los hijos, por ejemplo, copartícipes de una misma herencia o, respectivamente, herederos y legatarios de la misma sucesión. Sentencia del Tribunal Supremo de España de 6 de noviembre de 1934. Como dice Manresa, ob. cit., págs. 68–69 y comentando el artículo 165 de España equivalente al 160 nuestro:

> "Se considera por la doctrina que se presenta el conflicto de intereses, cuando el interés personal del padre se encuentre en antítesis con el de sus hijos, de modo que el primero para proveer a su propia defensa, se ve constreñido a agravar la condición o posición de los segundos, correspondiendo a las ventajas del uno el daño de los otros. En tal hipótesis falta al padre la serenidad necesaria *para tutelar los intereses de los hijos.*
>
> "El conflicto debe ser *actual y efectivo,* o aunque potencial y futuro, *ciertamente verificable y no meramente hipotético. ...*" (Bastardillas nuestras.)

Todo el concepto del interés opuesto está basado en algo real y efectivo y si, como estamos resolviendo, el hijo menor de edad no emancipado no tiene una causa de acción en casos como el presente en contra de su padre, no surge ni existe interés opuesto entre ellos.

Se arguye, además, que no existe ninguna determinación legislativa que disponga que esta clase de acciones milita en contra de la política pública del estado. No es necesaria tal determinación expresa. Ya hemos dicho que la unidad de la familia, la institución de la patria potestad, las relaciones paterno–filiales, como lo reconocen la jurisprudencia y las autoridades sobre la materia, están de por sí investidas de un alto interés público y social, tanto para beneficio del hijo como para beneficio del estado.

■ Sostiene, por último, el apelado que siendo codemandada la compañía de seguros que expidió la póliza que cubría los daños causados por la negligencia del padre, no es éste quien habrá de satisfacer el importe de la sentencia y que en todo caso, tiene una causa de acción en contra de la compañía aseguradora bajo el artículo 175 de la Ley de Seguros de Puerto Rico. Hemos resuelto lo contrario. En *United States Casualty Co.* v. *Corte*, 66 D.P.R. 937, 939, dijimos:

". . . Para que el demandante pueda obtener sentencia contra la compañía aseguradora es necesario que el asegurado sea responsable del daño causado, pues de no serlo, la compañía no tiene responsabilidad. . . ."

Al mismo efecto dijimos en *Bithorn* v. *Santana*, 68 D.P.R. 300, 305, que "la responsabilidad de la aseguradora depende de la responsabilidad del asegurado" y que por tanto, una demanda contra la aseguradora solamente, cuando no se ha obtenido antes sentencia firme contra el asegurado, no aduce una causa de acción.

Si no existe, como resolvemos, causa de acción en contra del padre en el presente caso, tampoco la hay en contra de la compañía aseguradora.

Hemos querido resolver el caso bajo el marco de nuestro Código Civil, según consideramos que la cuestión de interés público y social envuelta requiere que interpretemos el alcance del artículo 1802 en relación con la causa de acción ejercitada. Esto no obstante, podemos decir que la misma doctrina prevalece en la gran mayoría de las jurisdicciones estatales bajo el derecho común americano, aun cuando exista una póliza de seguro. Véanse al efecto las anotaciones en 31 A.L.R. 1157; 71 A.L.R. 1071; 122 A.L.R. 1352 y *Torts Between Persons in Domestic Relations* por William E. Mc Curdy, 43 Harv.L.Rev. 1030; 14 Tulane L.Rev. 468. Es de notarse que en Louisiana, de acuerdo con el artículo 104 del *Code of Practice* expresamente se prohibe esta clase de acciones.

Como ejemplo de la doctrina prevaleciente en el derecho común, en el caso de *Luster* v. *Luster*, 13 N.E.2d 438, 439 (Mass., 1938), se dijo lo siguiente:

". . . Probablemente debe concederse que la lógica pura no interpone obstáculo a tal acción. Pero desde el punto de vista práctico de una política pública sana serias objeciones se presentan de inmediato y con fuerza. Tales acciones, por lo menos cuando no son colusorias, tenderían casi inevitablemente a la destrucción de la paz y unidad de la vida familiar y a menoscabar la autoridad y disciplina paternal. En el continuo íntimo contacto entre padre e hijo a través de los largos años de la minoridad del hijo muchas ocasiones deben surgir de las cuales reclamaciones, reales o especiosas, podrían hacerse de que el padre había sido negligente en alguna cuestión de acción u omisión en perjuicio del hijo. Durante la minoridad del hijo tales reclamaciones, aun cuando válidas, podrían ser investigadas y proseguidas sólo por la intervención de extraños cuyas intrusiones, no siempre desinteresadas, en las intimidades de la vida familiar se trataría de excusar y justificar bajo el fundamento de que quizás se pueda encontrar una causa de acción para beneficio del hijo. La presente acción se trajo por un primo segundo del demandante que fué nombrado tutor varias semanas después del accidente. Otra alternativa igualmente repugnante sería el conservar la acción para ser proseguida por el hijo mismo después que llegue a su mayoría de edad, cuando las reclamaciones ya puedan ser rancias y los testigos no estar disponibles. No podemos aceptar la teoría de que la familia, como unidad fundamental social, esté tan moribunda que estas consideraciones hayan cesado de tener vitalidad."

Y como se dijo en el de *Securo* v. *Securo*, 156 S.E. 750, 751 (W. Va., 1931) : "Es preferible que un daño ocasional no sea recompensado a que la vida familiar sea expuesta a los efectos destructores de tales pleitos."

En efecto, creemos que al interpretar disposiciones de nuestro Código Civil en la forma en que lo hacemos, tendemos a fortalecer la unidad de la familia aun cuando, incidentalmente y en un caso aislado, un hijo no emancipado que vive con su padre y recibe de éste sus alimentos, educación e instrucción, sufre un daño causado por la negligencia

de su padre. Esa estabilidad familiar no debe resquebrarse a costa de obtener para el hijo una suma de dinero como indemnización por el daño causado.

*Debe revocarse la sentencia apelada y dictarse otra declarando sin lugar la demanda, con costas.*