EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Graciela Alonso García, en representación de su hijo menor Juan Ángel Ramírez Alonso <br>     Demandantes-Recurridos <br><br> v. <br><br> José B. Ramírez Acosta individualmente y la Sociedad Legal de Gananciales que tiene constituida con su esposa Aurora Elisa Tio Nazario y otros <br>     Demandados-Peticionarios | Certiorari <br><br> 2001 TSPR 126 <br><br> 154 DPR _____ |

Número del Caso: CC-2000-580

Fecha: 6/septiembre/2001

Tribunal de Circuito de Apelaciones:
                        Circuito Regional IV

Juez Ponente:
                        Hon. Roberto L. Córdova Arone

Abogado de la Parte Peticionaria:
                        Lcdo. Carlos Martínez-Texidor

Abogados de la Parte Recurrida:
                        Lcda. Monique Guillermard-Noble
                        Lcdo. Andrés Guillermard-Noble

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Graciela Alonso García,                    *
en representación de su hijo               *
menor Juan Ángel Ramírez Alonso            *
                                           *
    Demandantes y Recurridos               *
                                           *    CC-2000-580
              v.                          *
                                           *
José B. Ramírez Acosta,                    *
individualmente y la Sociedad              *
Legal de Gananciales que tiene             *
constituida con su esposa                  *
Aurora Elisa Tio Nazario,                  *
individualmente y la Sociedad              *
Legal de Gananciales que tiene             *
constituida con su esposo, José B.         *
Ramírez Acosta, Fulano de Tal,             *
Compañía Aseguradora A, B, C;              *
Compañía Aseguradora D, E, F               *
                                           *
    Demandados y Peticionarios             *
*************************************

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 6 de septiembre de 2001.

En el presente caso, se nos plantea como interrogante si la norma que le impide a los hijos presentar acciones en daños y perjuicios contra sus padres también cobija a los abuelos.

I

El 18 de octubre de 1986, un perro de raza mixta propiedad del Sr. José B. Ramírez Acosta y de su esposa, la Sra. Aurora Tió Nazario (en adelante "los peticionarios"), mordió al nieto de ambos, Juan Ángel Ramírez Alonso. Tal incidente ocurrió en la residencia de los peticionarios, abuelos paternos de Juan Ángel, en Lajas, Puerto Rico. Para esa fecha, el menor tenía dos (2) años de edad.[1]

---

[1] Cabe señalar que, el matrimonio entre la Sra. Alonso García y el Sr. José B. Ramírez Tió, padres de Juan Ángel, se disolvió nueve años después, en 1995. Desde entonces, el menor reside con su madre en San Juan, Puerto Rico.

Así las cosas, el 30 de diciembre de 1998, la Sra. Graciela Alonso García, en representación de su hijo Juan Ángel, instó una reclamación en daños y perjuicios contra los peticionarios y contra las compañías aseguradoras "ABC" y "CDE",[2] al amparo del artículo 1805 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5144.[3] En la contestación a la demanda, los peticionarios aceptaron los hechos, sin embargo, negaron haber incurrido en responsabilidad. Por no haber controversia de hechos, la Sra. Alonso García presentó una moción de sentencia sumaria. Los peticionarios se opusieron, y alegaron, entre otras cosas, que la reclamación presentada en su contra atenta contra la unidad familiar.

El 31 de enero de 2000, el Tribunal de Primera Instancia dictó sentencia sumaria en contra de los peticionarios. Concluyó que éstos eran responsables por los daños y perjuicios que sufrió Juan Ángel, en virtud del Artículo 1805 de nuestro Código Civil, *supra*.[4]

Los peticionarios recurrieron ante el Tribunal de Circuito de Apelaciones mediante recurso de apelación. Dicho foro dictó sentencia el 24 de mayo de 2000 confirmando al tribunal de instancia. Concluyó que la inmunidad de los padres frente a las acciones en daños y perjuicios de sus hijos no se extiende a la relación abuelo-nieto. Resolvió, además, que sólo los abuelos se servían del perro, razón por la cual éstos responden por los daños que dicho animal le ocasionó al menor, al amparo del artículo 1805 del Código Civil de Puerto Rico, *supra*.

---

[2] No surge de los autos que en efecto existiese una póliza de seguros que cubriese el incidente objeto de este pleito.

[3] Conforme al artículo 1805, *supra*, el poseedor de un animal responde por los perjuicios que éste ocasione. Dicho precepto dispone que, "[e]l poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe. Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido."

Inconformes, los peticionarios comparecen ante nos señalando como errores los siguientes:

PRIMER ERROR:

>Incidió el Honorable Tribunal del Circuito de Apelaciones, Circuito Regional IV de Aguadilla-Mayagüez, al aplicar el derecho a los hechos de este caso y al no considerar que el Artículo 1805 del Código Civil de Puerto Rico, 31 LPRA, Sección 5144, no es aplicable ya que el perjudicado era también poseedor del animal y se servía de éste al momento de la ocurrencia de los hechos de este caso.

SEGUNDO ERROR:

>Incidió el Honorable Tribunal del Circuito de Apelaciones, Circuito Regional IV de Aguadilla-Mayagüez al no hacer extensiva la doctrina jurisprudencial aplicable al impedimento de reclamaciones de hijos contra padres a reclamaciones de nietos contra abuelos ya que estas acciones también atentan contra la moral, orden público y política pública del Estado que vela por la unidad familiar. (Subrayado en el original.)

Mediante resolución de 15 de septiembre de 2000, expedimos auto de certiorari. Perfeccionado el recurso, resolvemos.

II

Discutiremos el segundo señalamiento de error, por entender que luego de ello podemos disponer del asunto sin ulterior discusión.

Desde 1950, se estableció jurisprudencialmente en Puerto Rico que los hijos no pueden instar acciones en daños y perjuicios contra sus padres, cuando ello afecte la unidad familiar, la institución de la patria potestad y las relaciones paterno-filiales. En *Guerra v. Ortiz*, 71 D.P.R. 613 (1950), se nos planteó, por primera vez, si al aprobar una disposición tan general como lo es el artículo 1802, *supra*, el legislador quiso reconocer

___

[4] El tribunal de instancia dejó pendiente de resolver el aspecto

que un hijo menor de edad tiene una causa de acción contra su padre por los daños que éste le ocasionó con sus actos negligentes. Allí resolvimos que no existe tal causa de acción por cuanto ello abriría una brecha peligrosa en la unidad familiar. Es decir, le concedimos a los padres inmunidad en pleitos incoados por sus hijos bajo el artículo 1802, *supra*. Señalamos, además, que la unidad familiar, la patria potestad y las relaciones paterno-filiales gozan de un alto interés público y social, tanto en beneficio del menor como del estado.

Posteriormente, en *Fournier v. Fournier*, 78 D.P.R. 430 (1955), reconocimos la primera excepción a la norma establecida en *Guerra v. Ortiz*, supra. En ese caso, una hija menor, no emancipada, instó una acción en contra de su padre por los daños que éste le ocasionó al matar a su madre. Ello, mediante actos delictivos, estando sus padres divorciados y la hija bajo la custodia de su madre, sin relacionarse con su padre. En esa ocasión, dictaminamos que en los casos en los cuales los padres actúen de forma delictiva, no se les concederá la referida inmunidad. A esos efectos expresamos que, al adoptar la doctrina que favorece la unidad familiar, nuestra intención no fue "enunciarla como norma absoluta, para concederle inmunidad a los padres contra acciones de los hijos basadas en culpa o negligencia, por la sola circunstancia del nexo natural que les une, sin estar justificada la inmunidad por consideraciones de orden público." *Íd.*, pág. 432.

Allí, también, concluimos que, en los casos en los cuales no haya unidad familiar que proteger, ni relaciones paterno-filiales que conservar, a los padres no se les concederá la inmunidad que les reconocimos en *Guerra v. Ortiz*, supra. Sobre el particular manifestamos:

> "[n]o tiene aquí justificación alguna la contención de que el reconocerle a la hija el derecho a recobrar indemnización de su padre, que le privó de la compañía, ayuda y cuidados de la madre, sería contrario a la política pública,

de los daños.

puesto que la unidad de la familia, y las relaciones paterno-filiales han desaparecido, y como cuestión de realidad, no existían desde mucho antes de morir la madre, que estaba divorciada del padre, estando limitadas las relaciones de éste con la hija, que vivía con aquélla, bajo su custodia y potestad, a pasarle una pensión alimenticia para el logro de la cual, entre paréntesis, fué [sic] necesaria la intervención judicial." *Fournier v. Fournier,* supra, pág. 433.

En *Drahus v. Nationwide Mutual Ins. Co.*, 104 D.P.R. 60 (1975), establecimos la segunda excepción a la inmunidad reconocida en *Guerra v. Ortiz*, supra. Allí, una hija demandó a la compañía de seguros de su padre reclamándole los daños que sufrió en un accidente mientras su madre —esposa del asegurado— conducía el automóvil de éste. Resolvimos que, tratándose de una acción directa contra la compañía aseguradora, ello no constituiría una amenaza a la integridad y la paz familiar que se quiso proteger en *Guerra v. Ortiz,* supra.

En *Martínez v. McDougal*, 133 D.P.R. 228 (1993), una hija habida fuera de matrimonio instó una acción en daños y perjuicios contra su padre reclamándole los daños que sufrió por su negativa injustificada de reconocerla. A tenor de lo resuelto en *Guerra v. Ortiz*, supra, negamos la existencia de una causa de acción en este caso. Ello, por entender que tal causa de acción atentaría contra la política pública de proteger y fortalecer la institución de la familia.

A los fines de incorporar en la ley lo que jurisprudencialmente habíamos resuelto, la Legislatura aprobó la Ley Núm. 193 de 6 de septiembre de 1996,[5] mediante la cual se añadió el artículo 1810A al Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5150 (Supl. 2000).[6] Dicho artículo dispone:

---

[5] Leyes de Puerto Rico, 1996, págs. 1097-1100.

[6] Surge del *Diario de Sesiones* de 21 de junio de 1995, págs. 219-234, que, de convertirse en ley el P. De la C. 1710, éste validará

> [n]ingún hijo podrá demandar a sus padres en acciones civiles en daños y perjuicios cuando se afecte la unidad familiar, la institución de la patria potestad y las relaciones paterno-filiales. Disponiéndose, que dicha prohibición no será absoluta y podrá ejercitarse la acción en daños y perjuicios cuando no haya unidad familiar que proteger, ni relaciones paterno-filiales que conservar.

En el presente caso, tanto el Tribunal de Primera Instancia como el Tribunal de Circuito de Apelaciones resolvieron que los peticionarios eran responsables a Juan Ángel por los daños sufridos, a tenor del artículo 1805, *supra*. Sostuvieron que la intención del legislador, al aprobar el artículo 1810A, *supra,* fue limitar la doctrina sobre la unidad familiar a las reclamaciones de hijos contra padres.

---

la doctrina que se ha desarrollado jurisprudencialmente con respecto a la unidad familiar.

III

Dicho lo anterior, veamos las normas aplicables a la interpretación de las leyes y al principio de hermenéutica legal.

El artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14, dispone que, cuando la ley es clara y libre de toda ambigüedad, la letra de la ley no debe ser menospreciada bajo el pretexto de cumplir con su espíritu. *Morell Corrada v. Ojeda*, res. el 20 de julio de 2000, 151 D.P.R. ____, 2000 T.S.P.R. 120, 2000 J.T.S. 132; *Santiago Meléndez v. Supte. Policía de P.R.*, res. el 23 de junio de 2000, 151 D.P.R. ____, 2000 T.S.P.R. 95, 2000 J.T.S. 115.

Sin embargo, con respecto a la discreción judicial, en *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 214 (1990) expresamos:

> [l]os tribunales estamos autorizados **a interpretar** las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere.... [7](Enfasis en el original.)

En cuanto a la interpretación literal de las leyes, hemos resuelto que la letra de la ley no debe seguirse ciegamente cuando ello iría en detrimento de su espíritu y fin. *Sucn. Álvarez v. Srio. de Justicia*, supra; *Pueblo v. Zayas Rodríguez*, res. el 17 de febrero de 1999, 147 D.P.R. ____, 99 T.S.P.R. 15, 99 J.T.S. 16.

Nos comentan los tratadistas Bernier y Cuevas Segarra que, la regla de hermenéutica legal denominada "expressio unius est exclusio alterius", que significa la mención específica de una persona o cosa implica la exclusión de otras personas o cosas, no

---

[7] Véase, además, *Sucn. Álvarez v. Srio. de Justicia,* res. el 11 de febrero de 2000, 150 D.P.R. ____, 2000 T.S.P.R. 21, 2000 J.T.S. 40; *Banco Popular de P.R. v. Municipio de Aguadilla*, res. el 29 de diciembre de 1997, 144 D.P.R. ____, 97 J.T.S. 152.

es de aplicación universal porque su propósito principal es determinar la intención del legislador.[8] A esos fines señalan:

> [C]uando esta intención surge de otra manera, no debe utilizarse como medio de interpretación si su aplicación está en pugna con el pensamiento del legislador. (Cita omitida.)
>
> Hay que cuidarse de que la enumeración que haga el texto no sea sólo un simple ejemplo. (Cita omitida.) También hay que cuidarse de que 'la exclusión no sea una inadvertencia o accidente'. No debe ser utilizada cuando su aplicación, teniendo en cuenta la materia a la que ha de ser aplicada, conduce a incompatibilidad o injusticia. (Cita omitida.) Además, esta regla constituye únicamente una ayuda para fijar el significado de la ley y debe ceder cuando surge una intención contraria de parte del legislador. (Cita omitida.)[9]

Los tribunales debemos interpretar los estatutos tomando en consideración el propósito social que los inspiró, dándoles un sentido lógico a sus diversas disposiciones y supliendo posibles deficiencias cuando sea necesario. *Sucn. Álvarez vs. Srio. de Justicia,* supra; *Pueblo v. Ferreira Morales*, res. el 10 de diciembre de 1998, 147 D.P.R. \_\_\_\_, 98 T.S.P.R. 165, 98 J.T.S. 150.

No obstante lo anterior, concluimos que, en el presente caso, no es necesario resolver el asunto a la luz de lo dispuesto literalmente por el artículo 1810A del Código Civil, *supra*.

De una simple lectura de este artículo, surge claramente que la inmunidad allí establecida sólo se le reconoció a los padres frente a reclamaciones en daños y perjuicios incoadas por sus hijos.

Nótese, sin embargo, que al aprobarlo el legislador meramente se limitó a incorporar en nuestro ordenamiento jurídico la norma establecida jurisprudencialmente por este Tribunal desde 1950.

Cónsono con la intención legislativa de conservar la unidad familiar, y de la misma manera que desde 1950 le concedimos

---

[8] R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, pág. 345.

[9] *Íd.*, pág. 346.

inmunidad a los padres en pleitos de daños y perjuicios incoados por sus hijos, hoy establecemos jurisprudencialmente que la norma del artículo 1810A, *supra*, debe extenderse a los abuelos.

La sociedad puertorriqueña ha reconocido tradicionalmente que los abuelos son una figura esencial en la formación y el desarrollo de los nietos.[10] Hoy día, son muchos los abuelos que atienden y cuidan a sus nietos mientras ambos padres trabajan en busca de unos ingresos proporcionados al costo de vida. Comúnmente, los abuelos se preocupan por la salud, la alimentación, el bienestar y la seguridad de sus nietos.[11] Además, se esmeran en brindarles cariño, atención y orientación.[12]

Por todo lo anterior, resolvemos que la inmunidad que establece el artículo 1810A de nuestro Código Civil, supra, cobija a los abuelos en Puerto Rico. El papel tan fundamental que cumplen en la sociedad puertorriqueña moderna no admite otro resultado.

La inmunidad que establece el artículo 1810A de nuestro Código Civil, *supra*, será extensiva a los abuelos, siempre y cuando entre éstos y sus nietos exista una

---

[10] Surge de la Exposición de Motivos de la Ley Núm. 182 de 22 de diciembre de 1997 que "[t]radicionalmente,

continúa...

... 10 continuación

la figura del abuelo es una que provee sosiego, solaz, protección y cuidado....La familia es pilar básico sobre el cual descansa la sociedad puertorriqueña y es donde el individuo establece y afirma su identidad. Mediante esta ley se reconoce que los abuelos juegan un papel importante dentro de ese núcleo que se llama familia y que éstos contribuyen grandemente al desarrollo físico, social y emocional de sus nietos." Leyes de Puerto Rico, 1997, págs. 913-914.

[11] Los artículos 143 y 144 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 562 y 563, le imponen a los abuelos la responsabilidad subsidiaria de alimentar a sus nietos.

[12] Con respecto al rol de los abuelos(as), la profesora Linda Henry Elrod nos comenta que, "[s]cholars have come to recognize the important unique role that grandparents play in a child's life.... [G]randparents can offer unconditional love without expectations and help connect the child with the past...." (Escolio omitido.) Arnold H. Rutkin, *Family Law and Practice,* LEXIS Publishing, 2001, pág. 32-284.

relación estrecha y afectuosa, y cuando los abuelos ejerzan un rol importante en la crianza de sus nietos. No será aplicable cuando no haya unidad familiar que proteger. Tal protección no será aplicable tampoco cuando los abuelos -al igual que en el caso de los padres- incurran en actos torticeros que sean intencionales o delictivos.

La relación abuelo(a)-nieto(a) está comprendida en el ámbito afectivo de la familia.[13] Por tanto, autorizar una causa de acción en daños y perjuicios contra los abuelos sin duda generaría animosidad e iría en detrimento del bienestar y la unidad de la familia puertorriqueña.

El propósito que nos mueve a extender a los abuelos la inmunidad establecida en el artículo 1810A, *supra*, responde a nuestra obligación, como tribunal de justicia, de fomentar e implementar la política pública del Estado de proteger y fortalecer la institución de la familia. Lamentablemente, cada vez más, la institución familiar sufre un serio menoscabo en perjuicio de nuestra sociedad cambiante. Es de vital interés público salvaguardar a aquellos núcleos familiares que permanecen unidos y que sostienen relaciones afectuosas entre sus miembros.

En el presente caso, para la fecha en que ocurrieron los hechos que dieron lugar a la demanda, Juan Ángel pernoctaba en la residencia de los peticionarios, en ausencia de sus padres. Surge del expediente que, frecuentemente, Juan Ángel, su hermano y los

---

[13] Sobre el particular, la licenciada Lissette Toro Vélez expresa:

> [l]os abuelos son parte integral en el núcleo de la familia puertorriqueña. En nuestra Isla, donde cada día son más los matrimonios que se divorcian, quedando los hijos, en la mayoría de los casos, bajo la custodia de la madre, éstos crecen sin el modelo del padre dentro de la familia. Es en estos momentos donde el cariño, afecto y comprensión de los abuelos para con los nietos es de vital importancia. Lissette Toro Vélez, *El Derecho de Visita de los Abuelos en Puerto Rico*, 33 Revista de Derecho Puertorriqueño 15 (1993).

padres de ambos visitaban a los peticionarios en Lajas, e incluso pernoctaban allí.[14] Evidentemente, para la fecha del accidente que dio lugar a la presente causa de acción, entre los peticionarios y Juan Ángel existía una relación afectuosa y estrecha. Ante tales circunstancias, entendemos que a los peticionarios les cobija la inmunidad que establece el artículo 1810A del Código Civil de Puerto Rico, *supra*. Así, pues, resulta innecesario entrar a discutir el primer señalamiento de error.

Por los fundamentos esbozados, revocamos el dictamen del Tribunal de Circuito de Apelaciones y el del Tribunal de Primera Instancia y desestimamos la demanda presentada en contra de los peticionarios.

---

[14] Sobre este particular, el padre de Juan Ángel declaró que, "[v]isitábamos a mis padres con frecuencia toda la familia y pernoctábamos allí, sobre todo en los fines de semana largos y en actividades familiares y participábamos todos en camaradería en unión a toda la familia." Declaración Jurada, Apéndice, pág. 71.

Se dictará sentencia de conformidad.


                                    BALTASAR CORRADA DEL RÍO
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Graciela Alonso García,              *
en representación de su hijo         *
menor Juan Ángel Ramírez Alonso      *
                                     *
     Demandantes y Recurridos        *
                                     *     CC-2000-580
          v.                         *
                                     *
José B. Ramírez Acosta,              *
individualmente y la Sociedad        *
Legal de Gananciales que tiene       *
constituida con su esposa            *
Aurora Elisa Tio Nazario,            *
individualmente y la Sociedad        *
Legal de Gananciales que tiene       *
constituida con su esposo, José B.   *
Ramírez Acosta, Fulano de Tal,       *
Compañía Aseguradora A, B, C;        *
Compañía Aseguradora D, E, F         *
                                     *
     Demandados y Peticionarios      *
**********************************

SENTENCIA


San Juan, Puerto Rico, a 6 de septiembre de 2001.


        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, revocamos el dictamen del Tribunal de Circuito de Apelaciones y el del Tribunal de Primera Instancia y desestimamos la demanda presentada en contra de los peticionarios.


        Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente con opinión escrita. El Juez Presidente señor Andréu García no intervino. Los Jueces Asociados señores Rebollo López y Hernández Denton están inhibidos.


                              Isabel Llompart Zeno
                          Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Graciela Alonso García, en
rep. de su hijo menor Juan
Ángel Ramírez Alonso

      Recurridos

        v.

José B. Ramírez Acosta,
individualmente y la Soc.                         Certiorari
Legal de Gananciales que          CC-2000-580
tiene constituida con su
esposa Aurora Elisa Tió
Nazario, et als

      Peticionarios

Opinión disidente emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 6 de septiembre de 2001.

La mayoría de los integrantes de este Tribunal entienden que la prohibición sobre presentación de demandas en daños y perjuicios de hijos contra sus padres, establecida en el artículo 1810A del Código Civil,[15] incluye a los abuelos con relación a acciones de esa naturaleza presentadas por sus nietos en contra suya. Respetuosamente disentimos del criterio mayoritario. Somos de la opinión que tal criterio debería ser la política pública adoptada en Puerto Rico. No obstante, consideramos que de la

---

[15] 31 L.P.R.A. sec. 5150.

interpretación de la letra y el historial legislativo

de la Ley Núm. 193 de 6 de septiembre

interpretación de la letra y el historial legislativo

de la Ley Núm. 193 de 6 de septiembre

de 1996,[16] no surge que la intención del legislador contemplara el extender dicha protección a los abuelos.

I

El menor Juan Ángel Ramírez Alonso sufrió la mordida de un perro propiedad de su abuelo, aquí peticionario, cuando tenía dos (2) años y tres (3) meses de edad. El menor se encontraba de visita en la casa de sus abuelos paternos cuando ocurrió el incidente el 18 de octubre de 1986. Este hecho fue aceptado por los aquí peticionarios en su contestación a la demanda.[17]

El 30 de diciembre de 1998, la demandante de autos, señora Graciela Alonso García, madre del menor, presentó una demanda contra los abuelos paternos de éste, el señor José B. Ramírez Acosta, su esposa, la señora Aurora Elisa Tió Nazario y la sociedad legal de gananciales compuesta por ambos.[18] Dicha demanda se presentó en representación del referido menor. En la misma se solicitó la compensación por los daños sufridos por el menor como consecuencia de la mordida del perro.[19] La parte aquí peticionaria radicó su contestación a la demanda el 21 de abril de 1999.[20] En la misma aceptaron la ocurrencia del incidente y que el niño fue llevado luego del mismo al Hospital de la Concepción en el Municipio de San Germán, por motivo de las heridas en la cara que sufrió a consecuencia de la mordida.

**El niño no vivía con sus abuelos paternos al momento del incidente, sino que estaba de visita en su casa, ubicada en Lajas. La residencia del menor estaba establecida en San Juan con sus padres.** En el año 1995 el matrimonio de los padres se disolvió y el menor pasó a residir desde entonces con su madre, aquí recurrida. El 7 de junio de 1999, la parte demandante de autos, aquí recurrida, presentó un escrito titulado "Moción Solicitando que se Dicte Sentencia Sumaria y Vista de Daños", alegando que al niño no se le puede imputar responsabilidad por la mordida del perro, debido a su

---

[16] Íd.

[17] Apéndice H del recurso de <u>Certiorari</u>, págs. 51-54.

[18] Apéndice G, Íd., págs. 43-50.

[19] Íd.

tierna edad, y que los abuelos no están cobijados por la inmunidad que establece el Código Civil de Puerto Rico en su artículo 1810A, 31 L.P.R.A. sec. 5150.[21] La parte aquí peticionaria radicó su oposición a dicho escrito el 17 de agosto de 1999, alegando, entre otras cosas, que no procedía que se dictara sentencia sumaria porque los abuelos están protegidos por la inmunidad contra demandas de daños y perjuicios presentadas por sus nietos, al igual que lo están los padres en cuanto a las acciones similares presentadas por sus hijos.[22]

El Tribunal de Primera Instancia dictó sentencia sumaria parcial el 31 de enero de 2000 declarando con lugar la demanda presentada por la parte aquí recurrida.[23] Luego de que se declaró no ha lugar por el Tribunal de Primera Instancia su solicitud de reconsideración y de determinaciones de hechos adicionales, la parte aquí peticionaria recurrió, mediante recurso de apelación, ante el Tribunal de Circuito de Apelaciones el 29 de marzo de 2000.[24] Ese foro apelativo intermedio confirmó la determinación del tribunal a quo, mediante sentencia emitida el 24 de mayo de 2001, archivándose en autos copia de su notificación el 31 de mayo del mismo año.[25]

Inconformes con dicha determinación, los aquí peticionarios recurren ante nos mediante recurso de Certiorari, señalando, en síntesis, que erró el Tribunal de Circuito de Apelaciones: (1) al no considerar al menor como poseedor del perro, por formar parte del núcleo familiar de los demandados de autos; y, (2) por no aplicar la inmunidad concedida por el artículo 1810A del Código Civil, supra, a los abuelos del menor.[26] Estando debidamente perfeccionado el recurso, pasamos a considerarlo en los méritos.

II

---

[20] Apéndice H, Íd., pág. 51.
[21] Apéndice I, Íd., pág. 55.

[22] Apéndice J, Íd., pág. 67.

[23] Apéndice A, Íd., pág. 23.

[24] Apéndice del recurso de Certiorari, pág. 1.

[25] Íd., págs. 86-94.

[26] Véase Petición de Certiorari, pág. 7.

Nuestro disenso no niega, por el contrario afirma, la razonabilidad y justicia de lo pautado por la mayoría de los integrantes de este Tribunal en el día de hoy. Como mencionáramos anteriormente, consideramos, en nuestro fuero interno, que la norma que pretende hoy formular este Tribunal debería ser la política pública vigente en Puerto Rico. Reconocemos que la misma se ajusta a la realidad cultural de nuestra sociedad, en la cual los abuelos generalmente forman parte de la familia y en muchos casos participan activamente de la crianza de sus nietos.

No obstante, muy respetuosamente, somos del criterio de que estamos impedidos de formular política pública sobre ese asunto. Bajo nuestro sistema de separación de poderes, esa función le corresponde a las otras dos ramas del gobierno. La separación de poderes forma parte integral de nuestra democracia constitucional. **Nuestro deber, dentro de la forma republicana de nuestro gobierno, se circunscribe a interpretar la ley y despejar las lagunas que existan en la misma, utilizando como guía la intención del legislador.** En Alejandro Rivera v. E.L.A.,[27] nos expresamos al respecto de la manera siguiente:

> Además, nos señala R.E. Bernier y J.A. Cuevas Segarra, en su obra *Aprobación e interpretación de las leyes de Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 299, que "[b]ajo un sistema de separación de poderes como el que funciona en Puerto Rico, la Asamblea Legislativa tiene la facultad de aprobar las leyes. El Poder Judicial ejercitado por los tribunales consiste en el ejercicio de las facultades de resolver los litigios a través de la interpretación de la ley. En el desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos. Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la rama legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable."

Es norma reiterada de hermenéutica que la letra clara de una ley es la mejor expresión del espíritu de la misma.[28] A esos efectos, el artículo

---

[27] 140 D.P.R. 538, 545 (1996).

[28] Santiago v. Supte. Policía de P.R., res. el 23 de junio de 2000, 2000 T.S.P.R. 95, 151 D.P.R. ___ (1995), 2000 J.T.S. 115; Alejandro Rivera v. E.L.A., supra; Meléndez v. Tribunal Superior, 90 D.P.R. 656 (1964).

14 del Código Civil de Puerto Rico[29] dispone que "[c]uando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Este precepto estatutario reconoce que la ley está sujeta a ser interpretada, pero limita la interpretación a lo que surja del texto claro de la misma.

El artículo 18 del Código Civil de Puerto Rico[30] reconoce que el espíritu de la ley, reflejado en la intención legislativa, es la mejor herramienta para encontrar el verdadero sentido de una ley. Como mencionáramos anteriormente, el ejercicio de la interpretación estatutaria está limitado por varias reglas de deferencia y abstención de parte de la Rama Judicial. El tribunal tiene que buscar la voluntad del legislador.[31] El espíritu de la ley juega un papel fundamental en la interpretación judicial de un estatuto. La intención del legislador al aprobar una ley es tan importante que hemos establecido, que si la letra clara de una ley está en contraposición con su espíritu, claramente establecida en el historial legislativo, prevalecerá este último.[32] Por otro lado, hemos resuelto que la función de los tribunales es la de interpretar la ley y no juzgar la sabiduría del legislador al aprobarla.[33]

En el caso de <u>Clínica Juliá v. Sec. de Hacienda</u>,[34] expresamos que:

> El juez es un intérprete, y no un creador. Su facultad de interpretación adquiere relevancia cuando del estatuto surgen varios significados probables que suministren un margen adecuado para selección judicial, pero si el lenguaje es tan inequívoco que postula un solo significado, un sentido cabal de humildad y autodisciplina judicial requiere la aplicación de la voluntad legislativa.

---

[29] 31 L.P.R.A. sec. 14.

[30] Íd., sec. 18.

[31] <u>Alejandro Rivera v. E.L.A.</u>, <u>supra</u>.

[32] <u>Figueroa v. Díaz</u>, 75 D.P.R. 163 (1953).

[33] <u>Famanina v. Corp. Azucarera de P.R.</u>, 113 D.P.R. 654 (1982).

[34] 76 D.P.R. 509, 521 (1954).

Siguiendo esta misma línea, nos expresamos en el caso de <u>Meléndez v. Tribunal Superior</u>[35] de la siguiente manera:

> En *Parrilla v Loíza Sugar Company*, 49 D.P.R. 597, 600 (1936), expusimos que "La regla de estricta hermenéutica no exige ni puede justificar que se elimine mediante legislación judicial cualquier parte de una ley, no importa cuál pueda ser la opinión del tribunal respecto a la conveniencia de la misma". Creemos justificado añadir que cuando los términos de un estatuto son claros y susceptibles de una interpretación inequívoca según el significado común y corriente de sus palabras y su construcción gramatical, bajo la misma regla tampoco debemos intercalar palabras ni suplir omisiones al interpretario [sic].

El principio de deferencia a la voluntad legislativa es tal que se ha resuelto que una omisión por inadvertencia del legislador no puede ser curada mediante fíat judicial. La doctrina del <u>casus omissus</u>, adoptada por esta Curia en el caso de <u>Andrades v. Pizza Hut Mgt. Corp.,</u>[36] nos lo impide. En ese caso[37] nos expresamos de la manera siguiente, citando a Bernier y Cuevas Segarra:[38]

> **Es una regla de hermenéutica legal que las omisiones del legislador no pueden ser curadas por los tribunales. Esa es la regla general tal como es expuesta corrientemente por los tribunales y se refiere a los casos en que el lenguaje del estatuto ha omitido algo que tampoco está dentro del propósito del mismo, pero que es claro de su lectura integral que fue omitido por inadvertencia. La razón de la regla es que el tribunal sólo interpreta y no legisla.**
>
> La regla se ha expresado en la siguiente forma: Al interpretar un estatuto, la intención legislativa debe ser buscada en el lenguaje usado en él con la ayuda que permiten las reglas de hermenéutica legal. **Pero un lenguaje nuevo o una disposición enteramente nueva no se puede leer en el estatuto para darle un significado que no está incluido en él. Aunque el tribunal puede interpretar frases oscuras y dudosas para darle efecto a la presunta intención del legislador y llevar a cabo los propósitos de la ley; no se puede por interpretación curar un casus omissus, no importa lo justo y deseable que pueda parecer.** *Meléndez v. Tribunal Superior*, 90 D.P.R. 656, 662 (1964) (Ramírez). (Énfasis nuestro.)

III

---

[35] 90 D.P.R. 656, 661-662 (1964).

[36] 140 D.P.R. 950 (1996).

[37] Íd., pág. 957.

[38] R.E. Bernier y J.A. Cuevas Segarra, <u>Aprobación e interpretación de las leyes en Puerto Rico</u>, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 47, pág. 311.

Utilizando las reglas de hermenéutica antes esbozadas, pasemos a interpretar el artículo 1810A del Código Civil, supra.

Entendemos, muy respetuosamente, que la letra de dicho artículo 1810A, supra, es clara. El mismo lee como sigue:

> Ningún hijo podrá demandar a sus padres en acciones civiles en daños y perjuicios cuando se afecte la unidad familiar, la institución de la patria potestad y las relaciones paterno-filiales. Disponiéndose, que dicha prohibición no será absoluta y podrá ejercitarse la acción en daños y perjuicios cuando no haya unidad familiar que proteger, ni relaciones paterno-filiales que conservar.

La disposición estatutaria pretende prohibir sólo las demandas de hijos contra padres para proteger la institución del núcleo familiar y la institución de la patria potestad, así como las relaciones paterno-filiales. Del historial legislativo no se desprende que haya mediado intención del legislador de extender esa inmunidad a otros miembros de la familia, como serían los abuelos. De hecho, el debate que surgió durante el proceso legislativo sobre esta medida giró solamente en torno a si esta disposición autorizaba o no las demandas de hijos en contra de sus padres por los daños que le pueden ocasionar al negarse a reconocerlos. En el descargo de nuestro ministerio de intérprete de la voluntad del legislador, muy respetuosamente creo que estamos impedidos de concluir en la dirección que se dirige la mayoría. Si bien es cierto que hay que interpretar las leyes de manera que produzcan resultados justos y coherentes, no es menos cierto que al ejercer ese ministerio tenemos que ajustarnos a la búsqueda de la intención del Poder Legislativo en su ejercicio de formular la política pública del Estado.

Las reglas de hermenéutica legal existen para asistir a los tribunales en la interpretación de los estatutos. Es función exclusiva de la Asamblea Legislativa el formular la política pública del Estado, mediante la aprobación de esos estatutos. El Poder Judicial, dentro de nuestro sistema republicano de gobierno, existe para interpretar la ley. Estamos impedidos de formular la política pública. Aún en casos como el presente, en el que nos parece que la política pública debería ser lo que pauta este Tribunal, no nos corresponde a nosotros ese ejercicio.

IV

Por los fundamentos antes expuestos, confirmaríamos la sentencia dictada por el Tribunal de Circuito de Apelaciones, que, a su vez, confirmó la emitida por el Tribunal de Primera Instancia.


Efraín E. Rivera Pérez
Juez Asociado